The HOH COMPANY, and George Hyman Construction Company

v.

The TRAVELERS INDEMNITY COMPANY, Appellant.

No. 89–7090.

United States Court of Appeals, District of Columbia Circuit.

Argued April 2, 1989.

Decided May 15, 1990.

Neal Brickman, New York City, pro hac vice, by special leave of the Court, for appellant. Tarrant H. Lomax, Washington, D.C., was on the brief, for appellant.

Robert C. Dunn, for appellees.

Before EDWARDS, RUTH BADER GINSBURG and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Appellant, The Travelers Indemnity Company ("Travelers"), appeals the District Court's interpretation of certain modifications to a subcontract between appellee, The HOH Company ("HOH"), and Travelers' principal, Ernst/Gate–City. HOH was the prime contractor in an arrangement with the City of Atlanta ("Atlanta") to construct a new terminal at the Atlanta International Airport; Ernst/Gate–City was a subcontractor hired to perform electrical work. Travelers contends that, under a "fourteen percent markup" provision in the contract between HOH and Atlanta, HOH was entitled to recover from Atlanta an amount equal to fourteen percent *over and above* what Ernst/Gate–City was due from Atlanta for its subcontract work. In other words, Travelers claims that HOH was not entitled to a fourteen percent share of any money received by Ernst/Gate–City from Atlanta solely for work done pursuant to the electrical subcontract. We agree; accordingly, we reverse the judgment of the District Court on this point.

Travelers also appeals the District Court's determination that a "Pass–Through Agreement," in which

Ernst/Gate–City agreed to reimburse HOH for legal expenses incurred in prosecuting Ernst/Gate–City's claims against Atlanta, triggered Travelers' liability as Ernst/Gate–City's guarantor for legal fees. While we affirm the District Court's holding that Travelers was liable for HOH's legal expenses, we remand the case to the District Court for a more precise determination of HOH's indemnable legal expenses.

## I. BACKGROUND

This appeal concerns two contract disputes arising out of the construction of a new terminal at the Atlanta International Airport. HOH, a joint venture consisting of The George Hyman Construction Company ("Hyman") (the managing joint venturer), the Ozanne Construction Company, and Huber, Hunt and Nichols, was the prime contractor under a 1977 contract between HOH and Atlanta. Ernst/Gate–City, a joint venture of E.C. Ernst, Inc., and the Gate City Electric Company, Inc., subcontracted with HOH to perform the necessary electrical work. Through a performance bond issued in 1978, Travelers guaranteed Ernst/Gate–City's performance of "all the undertakings, covenants, terms, conditions and agreements of any and all duly authorized modifications of [the] Subcontract." Joint Appendix ("J.A.") at 438.

On November 20, 1978, after certain contract disputes, HOH and Atlanta executed a formal modification of the 1977 contract, denoted Change Order 19, resolving all past claims between them. Change Order 19 also entitled HOH to a fourteen percent markup on the cost of each additional change to the contract or subcontract.[1] Thereafter, on February 9, 1979, HOH and Ernst/Gate–City executed a formal modification of the subcontract, denoted Change Order 56, by which HOH and Ernst/Gate–City resolved any past claims between them and extended the benefits of Change Order 19 to Ernst/Gate–City (*i.e.,* "the benefits of all settlements of claims and covenants against suit set forth in Paragraph 1 of Change Order 19...." J.A. at 584). Change Order 56 purports to incorporate the terms of Change Order 19,[2] although it is facially silent as to the fourteen percent markup, and nothing in Change Order 56 suggests that HOH is entitled to recover a fourteen percent *share* of any monies due to Ernst/Gate–City from Atlanta pursuant to the subcontract. With respect to the calculation of "benefits" to flow to Ernst/Gate–City and other subcontractors under Change Orders 19 and 56, section 9(b) of the subcontract provided that "subcontractor's allocable share of any adjustment in HOH's contract with [Atlanta] ... shall be determined by HOH, after allowance of HOH's normal overhead, profit and other interest in any recovery by making a reasonable apportionment, if applicable, between subcontractor, HOH, and other subcontractors or persons with interests in the adjustment." J.A. at 14.

Subsequent to the execution of the Change Orders, a dispute arose between HOH and Ernst/Gate–City regarding increased costs that Ernst/Gate–City claimed to have incurred as a result of changes ordered by the City of Atlanta. On June 16, 1981, Ernst/Gate–City submitted to HOH a claim for these costs. HOH refused to present that claim to Atlanta or to authorize Ernst/Gate–City to present the claim in HOH's name. On August 25, 1981, Ernst/Gate–City sent HOH a letter asserting that HOH's refusal to prosecute Ernst/Gate–City's claim was a breach of its obligations under the subcontract and that Ernst/Gate–City would hold HOH "entirely accountable." J.A. at 696.

On February 2, 1982, in a letter known as the "Pass–Through Agreement," Ernst/Gate–City wrote to HOH setting forth an agreement concerning HOH's presentation and prosecution of

---

1. "The Contractor will be allowed for overhead and profit 14% for each Addition Change after November 20, 1978." J.A. at 560.

2. "All references to Contract Documents in the Subcontract and changes thereto shall include all Change Orders and Field Orders under Contract T–1 [between Atlanta and HOH] through Change Order No. 19...." J.A. at 584.

Ernst/Gate–City's claims to and against the City of Atlanta. In the Pass–Through Agreement, HOH agreed to prosecute Ernst/Gate–City's outstanding claims against Atlanta; in return, Ernst/Gate–City agreed to reimburse HOH for all legal fees incurred in connection with the prosecution of Ernst/Gate–City's claims. Specifically, the Pass–Through Agreement states:

> You [HOH] agree to present the claim to the City of Atlanta ... and to prosecute it. You further agree that you will promptly pay to us all monies received by you from the City of Atlanta by reason of the claim.... All other legal fees incurred by you in the prosecution of the suit shall be deducted from any recovery made by you and paid to us.

J.A. at 440–41. In addition, Ernst/Gate–City withdrew its letter of August 25, 1981, and waived "any and all claims we might have against [HOH] to the date hereof by reason of [HOH's] failure to prosecute the claims." J.A. at 441. The terms of the Pass–Through Agreement were set forth in a February 2, 1982, letter to HOH from, and signed by, Ernst/Gate–City. Ernst/Gate–City acknowledged the validity of this agreement as late as January 2, 1986, in another letter to HOH.[3]

Pursuant to the terms of the Pass–Through Agreement, HOH filed suit in the Superior Court of Fulton County, Georgia, on behalf of itself and Ernst/Gate–City as co-plaintiffs, against Atlanta to recover Ernst/Gate–City's outstanding claims against Atlanta, *plus* HOH's fourteen percent markup on those claims. Atlanta denied the claims and counterclaimed against both plaintiffs. The state court granted Atlanta's motion to dismiss HOH as a party-plaintiff for lack of standing, leaving HOH as a party-defendant as to Atlanta's counterclaims. At this point, HOH was no longer a party-plaintiff to prosecute its own claims against Atlanta. Through counsel, HOH entered an opening statement, but

did not otherwise participate in the state court proceedings.

The state court appointed an auditor who, after a thirty-day inquiry, made findings and recommendations which the court adopted in full. *See Ernst/Gate–City and the HOH Company v. The City of Atlanta, et al.*, Civil Action File No. C–93932 (Superior Court of Fulton County, Georgia, Sept. 1986), J.A. at 661. Accordingly, the state court entered judgment in favor of Ernst/Gate–City for $500,247 on its subcontract claims against Atlanta. The state court *then* also considered HOH's claim for a markup and found that HOH was not entitled to fourteen percent on top of Ernst/Gate–City's claim. In adopting the auditor's report, the state court specifically found that "[t]he amount recommended by the Auditor is *net* of any amounts claimed by HOH, and it is the conclusion of the Auditor that HOH is not entitled to make any recovery in this case." J.A. at 691 (emphasis added). Thus, Ernst/Gate–City's recovery was calculated solely on the basis of what it was due for the electrical subcontract work, and it did not include any money attributable to HOH's claim for a fourteen percent markup.

HOH later filed this diversity suit against Travelers in the United States District Court for the District of Columbia, seeking both a fourteen percent share of Ernst/Gate–City's recovery against Atlanta, totalling $70,034.00, and legal fees of $67,667.34. After a bench trial, the trial judge entered judgment in favor of HOH on its claims for both the fourteen percent share and legal fees.

## II. ANALYSIS

### A. HOH's Claim for a Fourteen Percent Share of Ernst/Gate–City's Recovery Against Atlanta

Travelers first contends that Change Order 56 did not entitle HOH to extract fourteen percent of Ernst/Gate–City's recovery

---

**3.** "In regards to legal fees expended by HOH in this matter, Ernst/Gate–City agrees to reimburse HOH for the fees of outside counsel retained by HOH, subject to the receipt of billings

for such fees by Ernst/Gate–City. Of course, Ernst/Gate–City reserves the right to rule on the reasonableness of those billings." J.A. at 46.

from Atlanta for work done pursuant to the electrical subcontract. We agree. We find absolutely nothing in the contract, subcontract, or change orders to suggest that Ernst/Gate–City was obliged to surrender to HOH some fraction of its recovery against Atlanta in the event that Atlanta failed to pay HOH a "markup" on the amount due to the subcontractor. Alternatively, to the extent that section 9(b) of the subcontract suggests that HOH is entitled to a *share* of the money due to Ernst/Gate–City under the subcontract, we find that that section has been superseded by the Pass–Through Agreement. Accordingly, we reverse the judgment in favor of HOH on the claim for a fourteen percent share of Ernst/Gate–City's recovery.

### 1. The Dispute Over the "Markup"

■ HOH filed this action to recover a fourteen percent share of Ernst/Gate–City's $500,247 judgment against Atlanta. The Georgia state court's judgment in favor of Ernst/Gate–City for the $500,247 was separate from and did not include HOH's claim for a fourteen percent markup. In adopting the auditor's report, the court specifically found that

> [t]he amount recommended by the Auditor is *net* of any amounts claimed by HOH, and it is the conclusion of the Auditor that HOH is not entitled to make any recovery in this case.

4. Specifically, the court found that whether or not HOH was entitled to a fourteen percent markup, that figure would be cancelled out by HOH's liability to Atlanta on the city's counterclaim. *See* J.A. at 691–92. Of course, because HOH had been dismissed as a party-plaintiff, the issue of the fourteen percent markup was technically no longer before the court and we are not bound by its holdings on the markup.

5. Had Ernst/Gate–City recovered anything in excess of what it was due on the subcontract, we would be presented with a different issue.

6. Interpretation of the plain language of the contract documents is a question of law subject to *de novo* review by this court. *See Washington Metro. Area Transit Auth. v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C.Cir.1980); *see also NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 682 (D.C.Cir.1985) ("Generally, interpretation of a facially clear contract is considered a question of law and is for the court"). *See generally* J. CALAMARI & J. PERILLO, CONTRACTS sec.

J.A. at 691 (emphasis added).[4] Accordingly, the state court awarded Ernst/Gate–City $500,247 on its subcontract claim alone —*i.e.*, the figure to which Ernst/Gate–City was entitled for work performed under the subcontract. The state court specifically refused to *add* to this figure the fourteen percent claimed by HOH. HOH rightfully does not claim that Ernst/Gate–City recovered anything more than what it was entitled to under the subcontract.[5]

HOH is therefore seeking to recover its claimed fourteen percent out of Ernst/Gate–City's subcontract claim. The issue, then, is whether Ernst/Gate–City was contractually obligated to pay HOH fourteen percent of Ernst/Gate–City's subcontract fees; that is, for every dollar of work done by Ernst/Gate–City, was HOH entitled to $0.14 and Ernst/Gate–City to $0.86, or was HOH only to recover $0.14 from Atlanta for every dollar paid to Ernst/Gate–City? The contract documents make it clear that the parties contracted for the latter arrangement.[6]

Essentially, HOH now claims that it was entitled to a fourteen percent share of whatever Ernst/Gate–City claimed for its work. We disagree. By its terms, Change Order 19, a contract between HOH and Atlanta, is merely a promise by Atlanta to pay HOH fourteen percent on top of what Atlanta owes the subcontractor for work

3–14 at p. 174 (3d ed.1987). When we have no need to depart from the plain wording of the contracts and no extrinsic evidence is introduced, we are not bound by the clearly erroneous standard of review. *See Washington Metro. Area Transit Auth.*, 626 F.2d at 961. Because we rely on the plain language of the contract documents, and no extrinsic evidence was introduced to elucidate the meaning of those documents, we apply *de novo* review to their interpretation.

HOH urges us to apply the clearly erroneous standard of review because the District Court apparently relied heavily on the testimony of Joseph McManus. *See* J.A. at 95. Mr. McManus was legal counsel for HOH and, in this capacity, was intimately involved in this contract dispute. However, we will not credit as "extrinsic evidence" the self-serving post hoc statements of legal counsel on the "meaning" of a contract when the contract is clear on its face.

done. Change Order 56 does not alter the terms of Change Order 19, and in fact is silent on the fourteen percent markup. To the extent that Change Order 56 incorporates Change Order 19, HOH is nonetheless entitled only to recover an extra fourteen percent *from Atlanta,* over and above Ernst/Gate–City's recovery for work done.[7] Neither Change Order 56 nor any other contract document even so much as suggests that Ernst/Gate–City was contractually obligated to pay HOH a fourteen percent share of Ernst/Gate–City's own fees for work done. We will not impute such an obligation contrary to the plain language of the contracts.

Change Orders 19 and 56 entitled HOH to recover, from Atlanta, fourteen percent over and above whatever Ernst/Gate–City was due from Atlanta for electrical work on the airport terminal. Because the Georgia court awarded Ernst/Gate–City no more than it was entitled to recover under the subcontract for work done, we find that the District Court erred in awarding HOH fourteen percent of Ernst/Gate–City's recovery.

### 2. Section 9(b)

■ Section 9(b) of the subcontract does not alter our conclusion. This provision provides that:

> Subcontractor's allocable share of any adjustment in HOH's contract with [Atlanta] ... shall be determined by HOH, after allowance of HOH's normal overhead, profit and other interest in any recovery by making a reasonable apportionment, if applicable, between subcontractor, HOH, and other subcontractors or persons with interests in the adjustment.

J.A. at 431. HOH urges us to find that Change Order 19 was simply the implementing provision for section 9(b). That is, the fourteen percent markup described in Change Order 19 merely added a precise figure to the general mandate of section 9(b).

Even if we were to agree with HOH's interpretation of the relationship between section 9(b) of the subcontract and Change Orders 19 and 56, we find that HOH waived any right it may have had to the fourteen percent markup. The Pass–Through Agreement, between Ernst/Gate–City and HOH, provides that:

> You [HOH] agree that you will promptly pay to us [Ernst/Gate–City] *all monies* received by you from the City of Atlanta by reason of the Claim.

J.A. at 440 (emphasis added). For the reasons stated in section B.1. of this opinion, we find that the Pass–Through Agreement was binding as to both HOH and Ernst/Gate–City. Indeed, HOH relies on this precise agreement in seeking legal fees.

The Pass–Through Agreement, entered into after the Subcontract and Change Orders, supersedes those contracts. The Agreement was entered into in settlement of the claim asserted by Ernst/Gate–City against HOH in its August 25, 1981, letter. *See* J.A. at 696. That letter makes specific reference to the subcontract, asserts that HOH's refusal to prosecute its claim is a breach of its obligations to Ernst/Gate–City under the subcontract, and then asserts that Ernst/Gate–City will hold HOH "entirely accountable" for the claim. The Pass–Through Agreement resolved this dispute between Ernst/Gate–City and HOH.

The Pass–Through Agreement specifically and unambiguously states that HOH was not to retain any money recovered on Ernst/Gate–City's claim. It is therefore unsurprising that, in state court, HOH sued for the amount due to Ernst/Gate–City on the subcontract, *plus* a fourteen percent markup on top of Ernst/Gate–City's claims. HOH never made the claim that it was entitled to a fourteen percent share of Ernst/Gate–City's recovery. No such claim is cognizable under the parties' contracts.

We find that HOH was not entitled to a fourteen percent share of Ernst/Gate–

---

7. Change Order 19 can also be read as allowing Ernst/Gate–City to request the extra fourteen percent on behalf of HOH. *Indeed,* Ernst/Gate–City made this request, and the Georgia court specifically denied it.

City's recovery against Atlanta. To the extent that section 9(b) of the subcontract may have allowed for such a claim, we find that section to be superseded by the Pass–Through Agreement. Under either approach, we find that the District Court erred when it awarded HOH fourteen percent of the money due to Ernst/Gate–City under the subcontract.

### B. The Legal Fees

#### 1. Liability

█ The performance bond issued by Travelers on behalf of Ernst/Gate–City guaranteed to Hyman that Ernst/Gate–City would perform the obligations of the subcontract and any "duly authorized modifications" of the subcontract.[8] J.A. at 40. Travelers asserts that the Pass–Through Agreement, which obligated Ernst/Gate–City to reimburse HOH for legal fees incurred in the prosecution of Ernst/Gate–City's claims against Atlanta, was not a duly authorized subcontract modification, and therefore appellant should not be held liable on the bond. We find this argument unpersuasive. We agree with the District Court that the Pass–Through Agreement did constitute a duly authorized subcontract modification so as to trigger Travelers' liability.

The Pass–Through Agreement was a February 2, 1982, letter from Ernst/Gate–City to HOH stating, in pertinent part:

> You [HOH] agree to present [Ernst/Gate–City's] Claim to the City of Atlanta ... and to prosecute it.... You further agree that you will promptly pay to us all monies received by you from the City of Atlanta by reason of the Claim....
>
> All other legal fees and costs incurred by you in the prosecution of the suit shall be deducted from any recovery made by you and paid to us.

J.A. at 41–42. This letter was signed by Ernst/Gate–City and sent to HOH. The District Court found that HOH had performed its obligations under the letter and had never repudiated those obligations. J.A. at 92. At the same time, Ernst/Gate–City recognized its obligations under the Agreement as late as January 2, 1986, in a letter from Ernst/Gate–City to counsel for HOH:

> In regards to legal fees expended by HOH in this matter, Ernst/Gate–City agrees to reimburse HOH for the fees of outside counsel retained by HOH, subject to the receipt of billings for such fees by Ernst/Gate–City.

J.A. at 46. The District Court also found mutual consideration supporting the agreement. J.A. at 92.

Appellant claims that the Pass–Through Agreement did not constitute a duly authorized subcontract modification essentially because the Agreement lacked the formal trappings of the other "Change Orders." The Change Orders, it is true, were printed on HOH-prepared Change Order forms with a Change Order stamp, referred to the subcontract, were assigned Change Order numbers, and were signed by both parties. But, as Travelers concedes, the contracts provide no guidance as to just what constitutes a "duly authorized subcontract modification" for purposes of this performance bond. Nothing in any of the contract documents demands that only formal Change Orders will suffice to constitute duly authorized subcontract modifications. In fact, the performance bond itself states that:

> ... [Travelers] shall indemnify and save harmless said Obligee [Hyman] of and from any and all loss, damage, and expense, *including attorney's fees.*

J.A. at 40 (emphasis added).

In light of the facts that Ernst/Gate–City instigated the Pass–Through Agree-

---

**8.** Hyman was not originally a party to this action. Since Hyman was the obligee on the performance bond, it became imperative for HOH to add Hyman as a party-plaintiff. Under FED. R.CIV.P. 15(b), "[s]uch amendment of the pleadings may be made upon motion of any party at any time, even after judgment." "The decision whether to grant or deny leave to amend is within the sound discretion of the trial court and may be reversed only if it is a clear abuse of discretion." *Federal Nat'l Mortgage Assoc. v. Commissioner of Internal Revenue,* 896 F.2d 580, 588 (D.C.Cir.1990). We find no such abuse of discretion in the present case, especially since Travelers had not demonstrated any prejudice resulting from the amendment.

ment and reacknowledged its obligations under the Agreement as late as four years later, that HOH never repudiated its obligations under the Agreement, and that all parties consistently acted as if the Agreement was a binding agreement incident to their contractual relationship, we agree with the District Court's conclusion that the Pass–Through Agreement did constitute a duly authorized subcontract modification.

### 2. Extent of Liability

■ Because we cannot discern whether the District Court accurately calculated the extent of Travelers' liability for HOH's legal expenses, we remand this issue to the District Court for further consideration consistent with this opinion.

Under the Pass–Through Agreement, Ernst/Gate–City agreed to reimburse HOH for HOH's expenses incurred in prosecuting Ernst/Gate–City's claim against Atlanta. The District Court found that HOH would not have incurred *any* expense had they not been called upon to prosecute Ernst/Gate–City's claims against Atlanta. Accordingly, the District Court awarded HOH indemnification for *all* its legal expenses without itemizing those expenses incurred specifically in prosecuting Ernst/Gate–City's claim. While it is true that HOH participated in this action pursuant to an agreement to represent Ernst/Gate–City, nothing in the Agreement obligates Ernst/Gate–City to indemnify HOH for legal fees incurred in the prosecution of HOH's own claims, even if those claims happen to be presented in the same proceeding as the prosecution of Ernst/Gate–City's claims. Ernst/Gate–City's liability was limited by the Agreement to HOH's expenses incurred in the prosecution of Ernst/Gate–City's claims. To find otherwise would be to allow HOH carte blanche to pursue any claims during the proceeding and expect reimbursement from Ernst/Gate–City. Neither party contends that such a result was contemplated by the Pass–Through Agreement.

Some of HOH's expenses appear to have been incurred in the pursuit of its own legal agenda. These include, but are not necessarily limited to, seeking its fourteen percent markup from Atlanta and defending against the counterclaim by Atlanta to the extent that Ernst/Gate–City "had no responsibility for the subject matter of the counterclaim" and the counterclaim was not brought "by virtue of the performance of Ernst/Gate–City for actions which could be reasonably attributable to Ernst/Gate–City." *See* J.A. at 41. Such expenses should be severed from the award of legal fees which must be limited to those expenses incurred by HOH in prosecuting Ernst/Gate–City's claims. Because the District Court is in a better position to determine HOH's indemnable expenses, we remand this determination to the District Court for a more precise calculation. The court should segregate those expenses not incurred in the prosecution of Ernst/Gate–City's claim against Atlanta.

Finally, the record indicates that Ernst/Gate–City's attorneys paid $20,000 to HOH in 1986 toward legal expenses. The record also suggests the existence of an agreement whereby Ernst/Gate–City's attorneys will be reimbursed to the extent that HOH recovers its legal fees in the present action. On the record before us, we cannot ascertain the true nature of the payment or the agreement. The District Court did not make any findings nor draw any conclusions regarding the $20,000. On remand, the District Court should also consider this transaction to determine whether it warrants an equivalent credit against HOH's claims for legal fees.

### III. CONCLUSION

The judgment of the District Court is reversed as to HOH's recovery on the fourteen percent markup. While we affirm the District Court's determination that Travelers was liable to reimburse HOH for the legal fees, we remand for a more precise determination of HOH's expenses incurred in the prosecution of Ernst/Gate–City's claims.

*It is so ordered.*