**BUILDING & CONSTRUCTION TRADES DEPARTMENT, AFL–CIO, Plaintiff,**

v.

**Ann B. McLAUGHLIN, Secretary of Labor, et al., Defendants,**

**Midway Excavators, Inc., et al., Intervenors.**

**Civ. A. No. 84–0705 (WBB).**

United States District Court,
District of Columbia.

Aug. 17, 1990.

Terry R. Yellig, Sherman, Dunn, Cohen, Leifer & Counts, Washington, D.C., for Bldg. and Const. Trades Dept.

Michael J. Ryan and Daniel Bensing, Asst. U.S. Atty., Washington, D.C., for U.S. Dept. of Labor Wage Appeals Bd. and Raymond J. Donovan, Secretary U.S. Dept. of Labor.

Stephen R. Lohman, Washington, D.C., for Midway Excavators, Inc. and King Town Transp., Inc.

G. Brockwel Heylin, Associated Gen. Contractors of America, Washington, D.C., for Associated Gen. Contractors of America, Inc., amicus curiae.

Maurice Baskin, Venable, Baetjer, Howard & Civiletti, Washington, D.C., for Associated Builders & Contractors, Inc., amicus curiae.

## MEMORANDUM

BRYANT, Senior District Judge.

Pursuant to the remand order of our Court of Appeals the court is required to determine whether the application of a Labor Department regulation which defines "work" covered under the Davis–Bacon Act and related Acts to include "transporting materials and supplies to or from the building or work by the employees of the contractor" is consistent with the intended coverage of the Act, which by its terms applies to workers "employed directly upon the site of the work."

The developments which give rise to this issue are adequately set forth in this court's memorandum opinion filed March 6, 1986, and the Court of Appeals' opinion in No. 86–5229 filed December 4, 1987. 829 F.2d 1186.

Midway Excavators, Inc. (Midway) is a construction contractor. King Town Transportation, Inc. (King Town), Midway's wholly-owned subsidiary, is a trucking company engaged in operations for Midway and other companies. The truck drivers are permanent employees of Midway (because of the interrelationship of the two companies they have been perceived throughout these proceedings as a "single employer" for Davis–Bacon Act purposes).

Midway was the prime contractor on eleven federally-funded projects subject to the Davis–Bacon Act [1] (Act) or other feder-

---

**1.** The Davis–Bacon Act, 40 U.S.C. § 276a(a) provides in part:

(a) The advertised specifications for every contract in excess of $2,000 to which the Unit-

al laws which apply the prevailing wage requirements of the Act to federally-funded construction activities.[2] Under these contracts Midway was obligated to repair and/or build certain road surfaces. Midway's truck drivers performed all tasks associated with these jobs which required utilization of trucks. Some of the drivers were employed to drive trucks on the job sites as part of the construction work. Midway refers to these as its "nondelivery truck drivers". Other drivers were assigned the task of going to various material supply houses to pick up and haul loads of material therefrom to the job sites, dumping them there, and then repeating the process throughout the day. It took about ten minutes to dump each load. Midway refers to these latter drivers as their "material delivery truck drivers." Midway paid its so-called "nondelivery drivers" Davis–Bacon wages, but the "material delivery drivers" received their regular wages which were not up to the Davis–Bacon level. This differential in pay gives rise to the issue in this case. Midway rationalized the differential on the theory that its "material delivery drivers" were not covered by the statute inasmuch as

they spent too little time during the course of the work day on the job site to be considered as being "employed directly upon the site of the work." Midway's contention is a direct challenge to the validity of the Secretary's regulation insofar as it purports to extend coverage of the Acts' wage provisions to the activities of its truck drivers.[3]

Assessment of the relationship between the regulation and the statute calls for application of the methodology prescribed by *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) and its progeny.

The policy considerations prompting enactment of the Davis–Bacon Act are well known. Basically the Act is an early minimum wage measure designed to ensure that local construction workers not be frozen out of work on jobs covered by government contracts because of the importation of cheap labor paid wages less than the rate of pay prevailing in the area of the construction. The original Act was passed in 1931, then amended in 1935, and remains in force today without any significant modi-

---

ed States or the District of Columbia is a party, for *construction, alteration, and/or repair,* including painting and decorating, of public buildings or public works of the United States or the District of Columbia within the geographical limits of the States of the Union, or the District of Columbia, and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State in which the work is to be performed, or in the District of Columbia if the work is to be performed there; and every contract based upon these specifications shall contain a stipulation that *the contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work,* unconditionally and not less often than once a week.... [Emphasis added.]

2. One of the contracts was under the Davis–Bacon Act, 40 U.S.C. § 276a(a), three were under the Federal Aid Highway Act, 23 U.S.C. § 113,

and seven were under the Federal Water Pollution Control Act, 33 U.S.C. § 1372.

3. Section 5.2(j) of the Labor Department's "Davis–Bacon and Related Acts Provisions and Procedures," 29 C.F.R. Part 5, Subpart A, provides as follows:

(j) The terms "construction", "prosecution", "completion", or "repair" mean all types of work done on a particular building or work at the site thereof or under the United States Housing Act of 1937 and the Housing Act of 1949 in the construction or development of the project, including without limitation, altering, remodeling, painting and decorating, *the transporting of materials and supplies to or from the building or work by the employees of the construction contractor or construction subcontractor,* and the manufacturing or furnishing of materials, articles, supplies or equipment on the site of the building or work, or under the United States Housing Act of 1937 and the Housing Act of 1949 in the construction or development of the project, by persons employed by the contractor or subcontractor. A mere token beginning of the work shall not be deemed to be the "beginning of construction" as that term is used in the National Housing Act. [Emphasis added.]

fication. The thrust of the legislation is for the benefit of construction workers, rather than for construction contractors, *University Research Association, Inc. v. Coutu*, 450 U.S. 754, 771, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981); *Building & Construction Trades Department, AFL–CIO, et al. v. Donovan*, 712 F.2d 611, 613–14 (D.C.Cir.1983), *cert. denied*, 464 U.S. 1069, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984); and its language is rather straightforward. The Act clearly indicates that construction workers employed by government contractors, and who perform tasks which are necessary and dedicated exclusively to the satisfactory performance of government contracts, shall be compensated at a prescribed rate. This conclusion is compelled by terms of the Act which provide that every "contract ... for construction, alteration and/or repair ... which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages ... a contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work."

It is true that the Act does not define the terms "work", "construction", "repair" or "site of the work"; however, the absence of these definitions does not appear to provide any basis for seriously questioning the statute's applicability to Midway's truck drivers. They are mechanics or laborers employed by Midway to perform tasks required or involved in the completion of the work covered by the contract. More specifically, these drivers used trucks which belonged to Midway to haul material which belonged to Midway (f.o.b. supply house) to the point where it was to be used to complete the work. So it appears that even under the narrow concept of Midway's understanding of the meaning of "directly upon the site of the work," their truck drivers qualify for coverage. Obviously the actual dumping of the material at the job site amounts to employment "directly upon the site of the work," and all driver activity leading up to it is dedicated to that

accomplishment. The court concludes that this amounts to substantial work on the site, and is more than enough for coverage.

Midway takes the position that the language "employed directly upon the site of the work" lends itself to no ifs, ands, or buts, and it therefore urges upon the court that this language simply means that coverage extends only to those who are physically on the job site for the entire work day. The requirement by the language of the Act to draw such a fine line between construction workers employed by a government contractor is not discernible to the court.

However, in all candor, it may be that the apparent clarity perceived by the court comes about from a little more than the "plain language" of the Act, and is probably informed to some extent by research into its background and legislative history. That process pretty well exposes the purpose and intent of Congress. The objective was to extend the Davis–Bacon Act coverage to employees on a construction contractor's payroll working on a government contract and at the same time to withhold coverage from employees of concerns and establishments not under government contract (independent manufacturers and material suppliers).[4] The legislative history clearly reveals these purposes of the Act, and it appears to the court that the language of the Act adequately reflects them.

The court's decision in *H.B. Zachry Co. v. United States*, 344 F.2d 352, 170 Ct.Cl. 115 (1965) as a "logical extension of the congressional intent to exclude employees of materialmen from the coverage of the Davis–Bacon Act" is a bit more difficult to understand than the dissent in that case. However for purposes of this court's analysis it appears that *Zachry* is inapposite. In *Zachry* the court was concerned with the status of employees of an *independent* hauling contractor rather than the employees of the prime government contractor as

---

**4.** 75 Cong.Rec. 12366 (June 8, 1932); H.Rep. No. 1756, 74th Cong., 1st Sess. (1935); Legislative History of the Davis–Bacon Act, 87th Cong., 2nd Sess., 69–70 (1962).

is the case here.[5] And the *Zachry* court emphasized "that our decision is limited to the facts of this case." *Zachry,* 344 F.2d at 361. The drivers of Midway's trucks in this case are in no sense of the term employees of materialmen or suppliers. Nor can it fairly be said that they functioned as materialmen or in the materialmen's interest.

As a matter of fact, adopting Midway's theory would have the effect of amending the Davis–Bacon Act and the related Acts so as to apply the wage provision to all of the contractors' employees working on government jobs *except* those who transport "materials and supplies to or from the building or work." Nothing in the language or history of the Act suggests that this was contemplated, and such an interpretation promotes none of the objectives of the legislation.

While it is clear that Congress did not intend to include employees of independent suppliers and materialmen under the wage provision umbrella of the Act; it is equally clear that Congress had no intention to exclude anyone from that coverage for whose benefit the Act was passed, i.e., construction workers employed by government contractors. To do either would frustrate Congressional intent as reflected in the statute and its history.

At best, it might be said that the divergent views of the parties and the court as to the intended meaning of the Act as it relates to these facts are indicative of ambiguity in this regard. Assuming that this is the case, it cannot be concluded that the Secretary's regulation is inconsistent with the Act; that is to say, not based on a permissible interpretation of the statute.

Thus, it appears to this court that the Secretary's regulation is entirely consistent with the statutory objective of the Davis–Bacon and related Acts.

---

**5.** Judge Davis, in his dissent, points out: "if plaintiff [construction contractor] had used its own employees for this part of the project their wages would be subject to the Act." *Zachry* 344 F.2d at 362.