BUILDING AND CONSTRUCTION
TRADES DEPARTMENT,
AFL–CIO, Appellee,

v.

UNITED STATES DEPARTMENT OF
LABOR WAGE APPEALS BOARD,
et al., Appellees.

Midway Excavators, Inc., et
al., Appellants.

No. 90–5341.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 29, 1991.

Decided May 17, 1991.

Rehearing and Rehearing En Banc Denied
July 18, 1991.

Edward E. Shumaker, III, Concord, N.H., for appellants.

Fred E. Haynes, Asst. U.S. Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Dept. of Justice, were on the brief, for appellees, U.S. Dept. of Labor Wage Appeals Bd., et al. Daniel Bensing, Washington, D.C., Asst. U.S. Atty., Dept. of Justice, also entered an appearance for appellees.

Terry R. Yellig, Washington, D.C., for appellee, Building and Const. Trades Dept., AFL–CIO.

Maurice Baskin, Washington, D.C., was on the brief, for amicus curiae, Associated Builders and Contractors, Inc., urging that the District Court's decision be reversed and Regulation 5.2(j) be invalidated as being inconsistent with the Act.

Charles E. Murphy and Robert P. Casey, Chicago, Ill., were on the brief, for amicus curiae, Associated General Contractors of America, urging that the District Court's decision be reversed.

Before WALD, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Midway Excavators, Inc., *et al.* ("Midway") appeals from a district court judgment upholding a regulation promulgated by the Secretary of Labor ("the Secretary") pursuant to the Davis–Bacon Act ("the Act"), 40 U.S.C. § 276a et seq. (1935). The challenged regulation, 29 C.F.R. § 5.2(j) (1983), includes in the coverage of the Act truckdrivers employed by government contractors to transport off-site materials to the site of a federally-funded construction project. Midway contends that this regulation is inconsistent with the plain meaning of the Davis–Bacon Act, which requires government contractors to pay prevailing wages only to "mechanics and laborers employed *directly upon the site of the work.*" 40 U.S.C. § 276a(a) (emphasis added). We agree with Midway that this language unambiguously restricts the coverage of the Act to the geographical confines of the federal project's jobsite, and that nothing in the legislative history indicates a contrary meaning. Accordingly, the Secretary's regulation is contrary to that Act and we reverse the district court's decision.

## I. STATUTORY AND REGULATORY FRAMEWORK

Congress enacted the Davis–Bacon Act to protect local contractors from being underbid on federally-funded construction projects by government contractors who based their bids on imported labor who would work for cheaper wages than those prevailing in the area. *See* 74 Cong.Rec. 6510 (1931) (statement by Rep. Bacon); *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 773–74, 101 S.Ct. 1451, 1462–63, 67 L.Ed.2d 662 (1981). The Act applies to all government contracts for "construction,

alteration, and/or repair" and mandates that government contractors and subcontractors pay covered employees wages at least as high as those prevailing in the area where the public work is sited. *See* 40 U.S.C. § 276a(a).

The critical portion of the Davis–Bacon Act provides in pertinent part:

(a) The advertised specifications for every contract in excess of $2,000 to which the United States or the District of Columbia is a party, for construction, alteration, and/or repair, including painting and decorating, of public buildings or public works ... and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the [area] in which the work is to be performed, ... and every contract based upon these specifications shall contain a stipulation that *the contractor or his subcontractor shall pay mechanics and laborers employed directly upon the site of the work* [the prevailing wages].

40 U.S.C. § 276a(a) (emphasis added).

In 1941 the Secretary of Labor issued regulations to enforce this part of the Act.[1] The regulations define the statutory terms "construction," "alteration," and "repair" to include

all types of work done on a particular building or work at the site thereof ... all work done in the construction or development of the project, including without limitation, altering, remodeling, installation (where appropriate) on the site of items fabricated off-site, painting and decorating, *the transporting of materials and supplies to or from the build-*

*ing or work by the employees of the construction contractor or construction subcontractor*, and the manufacturing or furnishing of materials, articles, supplies or equipment on the site of the building or work ... by persons employed by the contractor or subcontractor.

29 C.F.R. § 5.2(j) (emphasis added). The Secretary's regulations also define the "site of the work" as

limited to the physical place or places where the construction called for in the contract will remain when work on it has been completed and, as discussed in paragraph ($l$)(2) of this section, other adjacent or nearby property used by the contractor or subcontractor in such construction which can reasonably be said to be included in the "site."

29 C.F.R. § 5.2($l$)(1). In addition, the site of the work may include "fabrication plants, mobile factories, batch plants, borrow pits, job headquarters, tool yards, etc., ... provided they are dedicated exclusively, or nearly so, to the performance of the contract or project, and are so located in proximity to the actual construction location that it would be reasonable to include them." 29 C.F.R. § 5.2($l$)(2). Not included in the site of the work, however, are facilities "whose locations and continuance in operation are determined wholly without regard to a particular Federal or federally assisted contract or project," or which are "permanent, previously established facilities ... even where the operations for a period of time may be dedicated exclusively, or nearly so, to the performance of a contract." 29 C.F.R. § 5.2($l$)(3).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Midway was a prime contractor on eleven federally-funded construction projects subject to the Davis–Bacon and related Acts.[2] King Town Transportation, Inc. was a wholly-owned subsidiary of Mid-

---

1. These regulations were issued under the authority of the Reorganization Plan No. IV, 40 U.S.C. § 276c. The regulations were reissued pursuant to the Reorganization Plan No. 14 of 1950, 40 U.S.C. § 276c (1958).

2. Related Acts include: the Federal Aid Highway Act, 23 U.S.C. § 113 (1968) and the Federal Water Pollution Control Act, 33 U.S.C. § 1372 (1972).

way engaged in trucking operations for Midway and other companies. Midway employed two types of King Town truckdrivers for the federal projects at issue in this case: "non-delivery" truckdrivers who drove trucks on the job site as part of the construction work, and "material delivery" or "over-the-road" truckdrivers who picked up supplies from various independent commercial suppliers, transported the supplies to the job site, and unloaded the supplies. The material delivery truckdrivers spent ninety percent of their workday on the highway driving to and from the commercial supply sources, ranging up to 50 miles round trip. *See Building & Constr. Trades Dep't, AFL–CIO v. United States Dep't of Labor*, No. 84–0705, 1986 WL 32745, Memorandum Opinion ("Mem. Op. I") at 3 (D.D.C. Mar. 6, 1986). The drivers stayed on the "site of the work" only long enough to drop off their loads, usually for not more than ten minutes at a time. They also hauled materials for other contractors to non-federal projects. Midway paid the non-delivery drivers Davis–Bacon wages, but paid the material delivery drivers wages that were below the Davis–Bacon prevailing wage level.

In January, 1981, the Wage and Hour Division of the Department of Labor ("DOL") determined that Midway had violated the Davis–Bacon Act by paying its material delivery truckdrivers less than the prevailing wages set by the Secretary pursuant to the Act. As a result, DOL withheld from the payments due Midway on the government contracts the amount of backpay allegedly due to the material delivery truckdrivers. On May 15, 1981, Midway requested a ruling on the dispute from the Secretary of Labor ("Secretary") and a stay of the backpay withholding. Relying on the Secretary's regulation, 29 C.F.R. § 5.2(j), the Assistant Administrator of the Employment Standards Administration, Wage and Hour Division of the Department of Labor, ruled that the material de-

livery truckdrivers were covered by the Act. After unsuccessfully requesting reconsideration of the decision, Midway appealed to DOL's Wage Appeals Board ("WAB"). The WAB reversed the Assistant Administrator's determination holding that the material delivery truckdrivers were acting in the place of "commercial suppliers" and, therefore, were not covered by the Davis–Bacon Act or the regulations enforcing that Act. *See* Wage Appeals Board Case No. 81–17, at 9 (Dec. 13, 1983).

The AFL–CIO challenged WAB's decision in district court. *See* 28 U.S.C. §§ 1331, 1337. Midway cross-claimed for return of the retained back wages, plus interest.[3] The district court reversed the WAB, holding that there was no rational basis for its determination that 29 C.F.R. § 5.2(j) did not cover the truckdrivers in this case. *See* Mem. Op. I at 13. However, the district court declined to address Midway's claim that 29 C.F.R. § 5.2(j) is inconsistent with the Davis–Bacon Act. And, although it rejected WAB's reasoning that the truckdrivers were excluded from the Act and the regulation because they were the functional equivalent of commercial suppliers, the district court did not explicitly decide the statutory issue. When Midway appealed, this court affirmed the district court's holding that § 5.2(j) applied to these facts, but remanded for a determination of the statutory question whether 29 C.F.R. § 5.2(j) is consistent with the Davis–Bacon Act. *See Building & Constr. Trades Dep't, AFL–CIO v. United States Department of Labor*, 829 F.2d 1186 (D.C. Cir.1987).

On remand, the district court deferred to the Secretary's interpretation of the Act under the second prong of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), holding that 29 C.F.R. § 5.2(j), which includes material delivery truckdrivers in the scope of the Davis–Bacon Act's coverage, is a permissi-

---

**3.** When Midway appealed to the WAB, it requested that the retained backpay be placed in an interest-bearing account. *See* Petition for Review by the Wage Appeals Board at 6 (Nov. 20, 1981). The district court, however, found

that it was unnecessary to reach Midway's cross-claim for the return of the withheld backpay plus interest because the DOL prevailed. *See* Mem. Op. I at 13.

ble construction of the statutory phrase, "the site of the work." *See Building & Constr. Trades Dep't, AFL–CIO v. McLaughlin,* 747 F.Supp. 26 at 28 Memorandum Opinion ("Mem. Op. II") (D.D.C. Aug. 17, 1990). The court found the Secretary's regulations consistent with the Act's purpose "to extend the Davis–Bacon Act coverage to employees on a construction contractor's payroll working on a government contract and at the same time to withhold coverage from employees of concerns and establishments not under government contract (independent manufacturers and material suppliers)." *Id.* at 28. The district court reasoned that Congress intended the Act to benefit all construction workers employed by government contractors, and did not intend to draw any hard and fast line between different kinds of construction workers. *See id.* Hence, it was reasonable for the Secretary to include off-site truckdrivers in its coverage because they were employees of the government contractor, not independent contractors. *See id.* Midway again appealed the district court's decision, and we now decide the statutory issue.[4]

### III. Discussion

■ Congress directed that Davis–Bacon prevailing wages be paid to "mechanics and laborers employed directly upon the site of the work." 40 U.S.C. § 276a(a). The question in this case is whether material delivery truckdrivers, who are employees of the contractor, but who work off-site

most of the time and come on-site only to drop off a delivery, are "mechanics and laborers employed directly upon the site of the work." Under the first prong of *Chevron,* "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82; *see State of Ohio v. U.S. Dep't of Interior,* 880 F.2d 432, 441 (D.C.Cir.1989). We will proceed to the second prong of *Chevron* only if the statute is silent or ambiguous. *See id.* 467 U.S. at 843, 104 S.Ct. at 2782.

Midway contends that the plain meaning of the critical phrase "employed directly upon the site of the work" clearly conveys a geographical limitation; in other words, only employees who work *on the site* are covered by the Act.[5] The Secretary, on the other hand, views "site of the work" as an inherently ambiguous and imprecisely defined limit, which can permissibly be interpreted to cover all deliveries from off-site to on-site,[6] when performed by mechanics and laborers [7] employed by the government contractor or subcontractor. The Secretary draws a line between the contractor's truckdriver employees and those of the independent commercial supplier based on the fact that the contractor's deliveries are undertaken as a part of the federal construction contract, while the commercial supplier's deliveries are part of a separate supply operation which only incidentally services the government contractor. The

4. Both the DOL and the Building and Construction Trades Dept., AFL–CIO are appellees in this appeal.

5. In this case, the material delivery truckdrivers came on-site for only ten minutes at a time to drop off their deliveries. Their time spent "directly upon the site of the work" constituted only ten percent of their workday. *See* Mem. Op. I at 3. No one has argued in this appeal that the truckdrivers were covered because they were on the construction site for this brief period of the workday.

6. Section 5.2(*l*)(2) of the Secretary's regulation defines the "site of the work" to include, *inter alia,* "fabrication plants, mobile factories, batch plants, borrow pits, job headquarters, tool yards" that are "dedicated exclusively, or nearly so, to the performance of the contract or

project, and are located in proximity to the actual construction location." 29 C.F.R. § 5.2(*l*)(2). The validity of this section is not before us at this time. The truckdrivers in this case were delivering supplies from independent suppliers to the construction site; they were not delivering supplies from a facility dedicated to the project, which is deemed part of the "site of the work" by the regulation, to the construction site. *See* Mem. Op. I at 3.

7. "Mechanics" and "laborers" are defined in the regulations as "those workers whose duties are manual or physical in nature (including those workers who use tools or who are performing the work of a trade), as distinguished from mental or managerial." 29 C.F.R. § 5.2(m).

Secretary's regulations thus determine coverage under the Act based on whether the truckdriver is employed by an entity that has assumed a portion of the contract work, *i.e.*, the government contractor or subcontractor, or is employed by an independent materialman, *i.e.*, supplier or transporter. Relying on the second prong of *Chevron*, DOL contends that we should defer to the Secretary's interpretation of the statute.[8] *See Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782.

We believe, however, that Midway and the WAB are correct in their reading of the Act. We find no ambiguity in the text: "site of the work" clearly connotes to us a geographic limitation. Thus, the ordinary meaning of the statutory language is that the Act applies only to employees working directly on the physical site of the public building or public work under construction.[9] And indeed, the Secretary's regulations define "the site of the work" as "limited to the physical place where the construction ... will remain," 29 C.F.R. § 5.2(*l*)(1), along with off-site facilities that are "dedicated exclusively" to the performance of the contract, and are "so located in proximity to the actual construction location that it would seem reasonable to include them." 29 C.F.R. § 5.2(*l*)(2); *see also Hyde Construction Co.*, 43 Comp. Gen. 84, 89 (1963) ("With obvious aforethought the legislators utilized a physical distinction based upon the precise location

where the work was being performed to shut off both responsibility for the payment of, and protection afforded through, minimum wage conditions of performance."). Thus, the plain language would seem to control the issue before us, unless there is evidence in the legislative history that Congress intended something else. *See Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782; *Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

Despite DOL's assertion that "there are conflicting statutory phrases, vague terms, and other indicia of legislative uncertainty," as well as, "extensive evidence of legislative ambiguity," surrounding the phrase, DOL points us to no evidence to support its claim. In fact, the only relevant legislative history identified supports the plain meaning of the text that off-site mechanics and laborers are not covered by the Act. *See* H.R.Rep. No. 1756, 74th Cong., 1st Sess. 2 (1935); S.Rep. No. 1155, 74th Cong., 1st Sess. 2 (1935); *House Hearings before the Committee on Labor, on S. 3847 and H.R. 11865*, at 183–84 (1932) [hereinafter *"House Hearings"*]; 75 Cong. Rec. 12366 (June 8, 1932) [hereinafter *"House Debate"*].

■ When members of Congress discussed the coverage in hearings and debates,[10] they invariably expressed an as-

---

**8.** Appellee, AFL–CIO, proffers yet another interpretation of the "site of the work" phrase. AFL–CIO contends that the "site of the work" is the physical location where any kind of work in furtherance of the contract is performed. Therefore, the public highways over which the trucks drive to reach the construction site would be considered a "site" where "work" is performed, thus making the truckdrivers "employed directly upon the site of the work." Although this interpretation, as well as the Secretary's interpretation, would include virtually all employees of the government contractor and subcontractor engaged in project-related work, it is the Secretary's interpretation that is at issue here.

**9.** When the original Act was passed in 1931, it did not contain the words "mechanics and laborers employed directly upon the site of the work." Instead it read: "mechanics and laborers employed directly upon the *site of the public building or public work*." Davis–Bacon Act, Act

of March 3, 1931, ch. 411, 46 Stat. 1494 (emphasis added). Nowhere in the reports on the 1935 amendment or earlier proposed bills was there any discussion of the change from "employed directly upon the site of the public building or public work" to "employed directly upon the site of the work." We believe that Congress intended the "site of the work" language to be an abbreviated, but synonymous substitute phrase for "site of the public building or public work," and that both refer to the specific location of the public building or work being constructed or repaired under the government contract.

**10.** The hearings and House debate concerned a 1932 bill to amend the Davis–Bacon Act that included the same "site of the work" language that later appeared in the 1935 Amendments to the Act. *See* S. 3847, 72d Cong., 1st Sess. (1932); Act of August 30, 1931, 49 Stat. 1011. The earlier bill was vetoed by President Hoover. *See Veto Message*, S.Doc. 134, 72d Cong., 1st Sess. (1932).

sumption that the Act's coverage would be restricted to mechanics and laborers who work directly on the project site. For example, there is evidence that workers who completed portions of the contract work off-site were not intended to be covered, *i.e.*, painters who painted building materials in the mills before those materials were brought to the construction site,[11] or off-site workers who constructed "pre-fabricated" component buildings in the steel mills for reconstruction on the site of the work.[12] Thus, what little legislative history can be found on the subject supports the interpretation that Congress intended the Act to apply only to on-site workers, and affirmatively intended it not to apply to off-site workers. Nothing in the legislative history suggests, as the DOL has ruled, that Congress intended the employment status of the worker, rather than the location of his

job, to be determinative of the Act's coverage.

The only other court to consider the question of Davis–Bacon coverage was the Court of Claims in *H.B. Zachry Co. v. United States*, 170 Ct.Cl. 115, 344 F.2d 352 (1965). The Court of Claims struggled with a similar issue of whether or not material delivery truckdrivers are covered by the Act; however, the truckdrivers in *Zachry* were not employees of the government contractor. In *Zachry*, the primary contractor at first attempted to find a material supplier who would include in its price the cost of delivery of the materials to the site. Unable to find such a supplier, the contractor purchased the materials from a supplier and hired a transportation company to deliver them to the site. The transportation company then hired individual truck owners-drivers to carry out the subcontract.[13]

11. During House hearings on a 1932 proposed amendment, which would have added on-site painters to the coverage of the Act, Congressman Gallagher and Congressman William B. Connery, Chairman of the Committee on Labor, expressed their concern that the Act's coverage should exclude off-site employees:

Mr. Gallagher. I should like to know what the committee has in mind relative to the kind of proposition I am about to mention.... We have now a post office at Louisville, Ky., being constructed by Pike & Cook, of Minneapolis, and the painting contractor doing the trim in the mill for that work is paying painters 40 cents an hour in the mill, while the rate on the outside is $1.12 an hour. The contention is that the work being done in the mill does not come within the scope of the Davis–Bacon Act because it is not done on the site of the job.

The Chairman. We have to be careful. For instance, if we cover steel turned out by United States Steel Corporation we shall have to fix the rate of wages in the United States Steel Corporation.

*House Hearings*, at 183–84 (1932).

12. The following exchange during the *House Debate* on the 1932 proposed amendment reflects Congress' intent to exclude off-site workers, such as steel manufacturers, from the Act:

Mr. LaGuardia. As the gentleman knows, under the present engineering methods a great deal of the building is really constructed in the steel mill and it is assembled on the spot.

Mr. Connery. Yes.

Mr. LaGuardia. As I read this bill, it is not sufficiently broad to reach out and compel the

prevailing rate of wages in the particular material built for that building.

Mr. Connery. I see what the gentleman is after; and while I heartily sympathize with his views on that, if we started in to take materials in connection with this, we would cover many, many industries in the United States, including the United States Steel Corporation, and we would be telling them what wages they would have to pay in that industry. We thought that was too big a field to cover at this time.

Mr. LaGuardia. There is a difference between material like brick and cement which may be used anywhere and the steel structure that is made for that building and that building alone.

Mr. Connery. Yes; but it would affect the bricks and everything else that is manufactured, and the Government would be regulating the wages of private industry. The committee thought that was a little too far to go at this time. I heartily sympathize with the views of the gentleman from New York.

*House Debate*, at 12366 (June 8, 1932).

We note here again that we are not deciding the validity of § 5.2(*l*)(2) of the Secretary's regulations, which includes in the definition of the "site of the work" manufacturing facilities that are located off-site, so long as the facilities are dedicated exclusively to the contract and are located in proximity to the actual construction site. *See supra*, note 6.

13. Although the transportation company was under a "subcontract" with the primary contractor, *see Zachry*, 344 F.2d at 354, thus seemingly making it a "subcontractor" for purposes of the

DOL argued in *Zachry*, as it does here, that because the transportation firm "was [the government contractor's] subcontractor ... his employees were therefore covered by the Davis–Bacon Act." *Id.* at 361. The Court of Claims rejected that argument in *Zachry*, and we reject it here. The Court of Claims found that the individual truckdrivers were not covered by the Davis–Bacon Act because they were essentially the same as off-site "materialmen" or suppliers who are excluded from the Act's coverage. *Id.* The court reasoned that the transporter's employees

> were not covered by the labor statutes because of the nature of the function [they] performed, namely, the delivery of standard materials to the site—a function which is performed independently of the contract construction activities. We think this decision is a logical extension of the congressional intent to exclude employees of materialmen from the coverage of the Davis–Bacon Act.

*Id.* Thus, the *Zachry* court found that because material delivery truckdrivers serve the same function as materialmen, and materialmen are excluded from the Act, the truckdrivers who deliver supplies from the materialman to the construction site must likewise be excluded. The fact that the truckdrivers were under contract to the transportation subcontractor, not to a materialman, was not considered determinative by the court under its functional analysis of the Act's coverage. *See id.*

The *Zachry* court did, however, leave open the possibility of a distinction between truckdrivers who are employees of the government contractor and independent truckdrivers who, like materialmen, are not directly under contract with the government. We reject that distinction, however, and hold that the Act covers only mechanics and laborers who work *on the site* of the federally-funded public building or public work, not mechanics and laborers em-

ployed *off-site*, such as suppliers, materialmen, and material delivery truckdrivers, regardless of their employer.

In sum, we find, not surprisingly, that Congress intended the ordinary meaning of its words; the phrase "mechanics and laborers employed directly upon the site of the work" restricts coverage of the Act to employees who are working directly on the physical site of the public building or public work being constructed. Material delivery truckdrivers who come onto the site of the work merely to drop off construction materials are not covered by the Act even if they are employed by the government contractor. We hold that 29 C.F.R. § 5.2(j), insofar as it includes off-site material delivery truckdrivers in the Act's coverage, is invalid. Therefore, Midway's material delivery truckdrivers are not covered by the Davis–Bacon Act, and Midway is entitled to the backpay withheld by the DOL on the government contracts.

Midway petitioned below and on appeal for an award of interest on the withheld backpay. Because the district court held in favor of the DOL, it did not reach the issue of whether an award of interest would be proper in this case. On remand, therefore, the district court should determine whether an award of interest is appropriate.

So ordered.

---

Act, the *Zachry* court equated the transportation company with an independent material supplier because it was "an independent trucking concern." *Id.* at 360. We see no relevant distinction between an independent company, like that in *Zachry*, which carries on a regular transportation business separate from the government

contract and a subsidiary of the primary contractor who also carries on a transportation business independent of the government contract. In this case, Midway employed truckdrivers from its subsidiary King Town, a transportation business that exists independently of the government contracts in question.