Sharifi v. Young Bros 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-001-CV

Â Â Â Â Â NASSER SHARIFI,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â YOUNG BROTHERS, INC.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 74th District Court
McLennan County, Texas
Trial Court # 89-3626-3
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Article 5159a, the so-called "Texas Davis-Bacon Act," requires contractors and subcontractors
employing laborers, workmen, and mechanics "in the execution of any contract or any contracts
for public works" to pay the prevailing wage rate. Tex. Rev. Civ. Stat. Ann. art. 5159a, Â§ 1
(Vernon 1987). The question presented is whether a truck driver delivering construction materials
from a contractor's storage facility to a highway construction site is then employed "in the
execution of [the] contract." We hold that the legislature intended such an employee to be covered
by the Act. Accordingly, we reverse the summary judgment that the employee take nothing in his
suit against the contractor for the difference between the wages he actually received and the
prevailing wage while delivering material to the construction site. 
Â Â Â Â Â Â Young Brothers, Inc., a highway construction company, employed Nasser Sharifi from 1984
until August 15, 1989. Sharifi's job was to drive a truck loaded with materials (sand, clay, and
gravel) from Young Brothers' storage facility to highway construction sites, deposit the materials,
and then return for another load. Young Brothers paid Sharifi an hourly wage that ranged between
$4.60 and $5.50, which was less than the prevailing wage set for highway projects, but did pay
him the prevailing rate for the time he was actually on the construction site moving materials. 
Sharifi sued Young Brothers for the difference between the wages he actually received and the
wages he would have received had he been paid the prevailing rate. The court granted Young
Brothers a take-nothing summary judgment on the ground that, as a matter of law, the time Sharifi
spent delivering materials to the job sites was excluded from the Act's coverage. 
Â Â Â Â Â Â Disposition of this appeal necessarily turns upon what the legislature intended when it enacted
this portion of article 5159a in 1933: 
Sec. 1. Not less than the general prevailing rate of per diem wages for work of a similar
character in the locality in which the work is performed, and not less than the general
prevailing rate of per diem wages for legal holiday and overtime work, shall be paid to all
laborers, workmen and mechanics employed by or on behalf of the State of Texas, or by or
on behalf of any county, city and county, city, town, district or other political subdivision of
the State, engaged in the construction of public works, exclusive of maintenance work. 
Laborers, workmen, and mechanics employed by contractors or subcontractors in the
execution of any contract or contracts for public works with the State, or officer or public
body thereof, or in the execution of any contract or contracts for public work, with any
county, city and county, city, town, district or other political subdivision of this State, or any
officer or public body thereof, shall be deemed to be employed upon public works.

See id. (emphasis added). Specifically, we must determine what the legislature intended to be
included in the phrase "in the execution of any contract." Did it intend to exclude, as Young
Brothers argues, time spent delivering materials to a job site? The company bases its
interpretation on case law construing the federal Davis-Bacon Act. See 40 U.S.C. Â§ 276a(a) (West
1986); Building & Const. Trades Dept. v. Dept. of Labor, 932 F.2d 985, 990 (D.C. Cir. 1991);
H.B. Zachry Company v. United States, 344 F.2d 352, 361 (Ct. Cl. 1965). Sharifi contends that
an employee delivering materials to a public-works job site is engaged in the execution of the
contract as much as an employee working at the job site.
Â Â Â Â Â Â The intention of the legislature must be ascertained from the language of the statute, if
possible. Minton v. Frank, 545 S.W.2d 442, 445 (Tex. 1976). The legislature's manifest
objective is stated in explicit language: to provide for the payment of not less than the general
prevailing rate of wages on public works. See Tex. Rev. Civ. Stat. Ann. art. 5159a, Â§ 1
(Vernon 1987). 
Â Â Â Â Â Â The problem lies in the legislature's failure to define the phrase "in the execution of any
contract," which is the provision limiting the statute's coverage. Because it did not define the term
"execution," a word of common usage, we must give it its ordinary and common meaning. See
Satterfield v. Satterfield, 448 S.W.2d 456, 459 (Tex. 1969). Black's Law Dictionary defines
"execution" as "the completion, fulfillment, or perfecting of anything, or carrying it into operation
and effect." Black's Law Dictionary 510 (5th ed. 1979). Based on this definition, we
conclude that the legislature intended that employees delivering materials to a Texas public-works
construction site be included within the coverage of the Act. Young Brothers' construction
contracts could not have been completed without materials being delivered to the work site. 
Sharifi's work was as directly related to and as essential to completion and fulfillment of the
contracts as the work of employees using the materials at the job site. 
Â Â Â Â Â Â Young Brothers asserts, however, that article 5159a should be construed in the same manner
as the federal Davis-Bacon Act, which requires contractors to pay prevailing wage rates to
employees "employed directly upon the site of the work." See 40 U.S.C. Â§ 276a(a) (West 1986). 
Case law has interpreted the federal Act as excluding employees delivering standard materials to
the job site. Building & Const. Trades Dept., 932 F.2d at 990; H.B. Zachry Company, 344 F.2d
at 361. 
Â Â Â Â Â Â When a federal statute is adopted in a statute of this state, a presumption arises that the
legislature knew and intended to adopt the construction placed on the federal statute by federal
courts. State v. Klein, 154 Tex. Crim. 31, 224 S.W.2d 250, 253 (1949). This rule of
construction is applicable, however, only if the state and federal acts are substantially similar and
the state statute does not reflect a contrary legislative intent. Compare Klein, 224 S.W.2d at 253;
Blackmon v. Hansen, 140 Tex. 536, 169 S.W.2d 962, 964-65 (1943).
Â Â Â Â Â Â After comparing the two statutes, we conclude that their coverage provisions are not
substantially similar and that the legislature clearly intended to broaden the coverage of article
5159a when it selected the phrase "in the execution of any contract" rather than the phrase
"employed directly upon the site of the work" found in the federal Act. The federal Act is by its
plain language more restrictive in its coverage than the Texas Act. Under the circumstances, we
must determine and follow the intent of the legislature when it adopted a statute with obviously
broader coverage. Thus, the federal cases cited by Young Brothers are not controlling in
determining the coverage of the Texas Act.
Â Â Â Â Â Â Young Brothers correctly points out that article 5159a is not applicable to every employee
who has some connection with a public-works project. Obviously, a line of demarcation must be
drawn at some point, but we need not attempt to definitively draw that line here. Our holding is
a limited one, based upon the specific facts of this case. We hold that a truck driver is entitled to
the prevailing wage rate for time spent delivering materials to a highway construction site because
he is employed "in the execution of [the] contract." 
Â Â Â Â Â Â We reverse the summary judgment and remand the cause for a trial.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â BOB THOMAS
Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Before Justice Thomas,
Â Â Â Â Â Â Judge Cummings, and
Â Â Â Â Â Â Judge Vance
Reversed and remanded
Opinion filed and delivered July 22, 1992
Publish



h every night that King spent the night at their home.  Mary
testified that King spent the night at her house at least four nights a week
from May of 2008 through his arrest for this offense in early 2009.Â  King does
not argue that the evidence was insufficient for the jury to have found that he
committed the offenses on the specific dates as alleged in the indictments, but
that it was insufficient for the jury to have found that he committed the
offenses in 2008.Â  Additionally, King did not dispute the fact that he resided
in MaryÂs residence fairly regularly in 2008.Â  

Â Â Â Â Â Â Â Â Â Â Â  KingÂs final contention is that the
evidence was legally and factually insufficient for the jury to have found that
he committed the offenses with the intent to arouse or gratify his sexual
desire.Â  Tex. Pen. Code Ann. Â§
21.11(c) (Vernon 2003).Â  ÂThe requisite specific intent to arouse or gratify
can be inferred from the defendantÂs conduct and remarks and all the
surrounding circumstances.ÂÂ  Villanueva v. State, 209 S.W.3d 239, 246
(Tex. App.ÂWaco 2006, no pet.); accord Abbott v. State, 196 S.W.3d 334,
340 (Tex. App.ÂWaco 2006, pet. ref'd); see Cunningham v. State, 726
S.W.2d 151, 154 (Tex. Crim. App. 1987).Â  The jury can infer intent to arouse or
gratify sexual desire from KingÂs act of touching the childÂs genitals.Â  Abbott,
196 S.W.3d at 340.

We find that the jury could infer from KingÂs
conduct of touching M.K.Âs breasts and genitals that it was done with the
intent to arouse and gratify his sexual desire.Â  See Abbott, 196 S.W.3d
at 341; Fetterolf v. State, 782 S.W.2d 927, 933 (Tex. App.ÂHouston [14th
Dist.] 1989, pet. refÂd) (requisite intent to arouse and gratify sexual desire
found from defendantÂs touching sleeping childÂs breast).Â  The evidence that
King committed the same conduct on other occasions is additional evidence of
intent.Â  See Morgan v. State, 692 S.W.2d 877, 881 (Tex. Crim. App. 1985)
(evidence that defendant had touched complainant in same manner on the night
before the charged offense and on previous occasions had Âindubitable probative
valueÂ of defendantÂs intent).

We find that by viewing all of the evidence in the
light most favorable to the verdict that the jury could have found the
essential elements of the crime beyond a reasonable doubt.Â  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).Â  Therefore, the
evidence was legally sufficient.Â  We overrule issue one.

Further, when we view the evidence in a neutral
light, favoring neither party, we cannot find that the evidence was so weak
that the juryÂs determination is clearly wrong and manifestly unjust or that
conflicting evidence so greatly outweighs the evidence supporting the
conviction that the juryÂs determination is manifestly unjust.Â  Steadman,
280 S.W.3d at 246; Watson, 204 S.W.3d at 414-15, 417.Â  Therefore, the
evidence was also factually sufficient.Â  We overrule issue two.

Admission of Evidence

Â Â Â Â Â Â Â Â Â Â Â  King complains that the trial court
abused its discretion in allowing an expert witness to testify as to M.K.Âs
credibility and in denying a motion for mistrial because that testimony had the
effect of replacing the jury as the fact-finder.Â  We review the trial courtÂs
decision to admit or exclude evidence under an abuse of discretion standard.Â  Montgomery v. State, 810 S.W.2d 372, 390-91 (Tex. Crim. App. 1990) (op. on
reh'g) (Âas long as the trial courtÂs decision was within the zone of
reasonable disagreement and was correct under any theory of law applicable to
the case, it must be upheldÂ). Â Â Â 

Â Â Â Â Â Â Â Â Â Â Â  King complains of several different
segments of testimony given by M.K.Âs therapist that he contends violated Rule
704 of the Rules of Evidence.Â  Rule 704 states that Â[t]estimony in the form of
an opinion or inference otherwise admissible is not objectionable because it
embraces an ultimate issue to be decided by the trier of fact.ÂÂ  Tex. R. Evid. 704.Â  King contends that
in certain segments of her testimony, the therapist improperly gave the opinion
that M.K. was truthful in her allegations, that she stated that sexual abuse
had in fact occurred, and that she referred to King inappropriately as the
Âperpetrator.Â

Â Â Â Â Â Â Â Â Â Â Â  King first complains about the
following question asked by the State:Â  ÂI believe you mentioned trauma, that
you believed she had experienced some trauma.Â  How did you know that?ÂÂ  King
objected to the question and the objection was sustained.Â  However, King did
not request a limiting instruction or seek any further relief from the trial
court.Â  The second question King complains about is the following question by
the State:Â  ÂWhat do you believe she was not faking about?ÂÂ  King objected, but
no ruling was made by the trial court because the State offered to rephrase the
question.Â  In order to preserve error, the party asserting an objection must
pursue the matter to the point of receiving an adverse ruling from the trial
court.Â  Tucker v. State, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999).Â 
The proper method of pursuing an objection to an adverse ruling has three
parts.Â  They are: (1) object and, if the objection is sustained; (2) request an
instruction to disregard and, if granted; (3) move for a mistrial.Â  Fuller
v. State, 827 S.W.2d 919, 926 (Tex. Crim. App. 1992).Â  

Â Â Â Â Â Â Â Â Â Â Â  King also complains of an answer given
by the therapist in response to questions from the State regarding her
diagnosis of sexual abuse of a child relating to M.K.Â  The State asked the
therapist:Â  ÂWhat things did you see in your sessions that you felt justified
in putting that label on her, so to speak?ÂÂ  The therapist responded:Â  ÂThe
only way that that can be diagnosed is if thatÂs the presenting problem for the
child.Â  And for [M.K.] that was the only reason I was seeing her is because
there was sexual abuse.ÂÂ  King objected, and the trial court sustained the
objection and gave an instruction to the jury to disregard the last part of the
answer.Â  KingÂs motion for mistrial was denied.

Â Â Â Â Â Â Â Â Â Â Â  Additionally, King complains of an
answer given in response to a question regarding M.K.Âs progress in counseling
where the therapist stated:Â  ÂI feel like [M.K.] was able to continue to move
forward because she has such a strong family background and support.Â  I also
believe because the person that perpetrated this abuse was no longer in her
home.ÂÂ  King objected, and the trial court sustained the objection and gave an
instruction to the jury to disregard the last part of the answer.Â  KingÂs
motion for mistrial based on the statement and the testimony as a whole was
denied.

The next question from the State was whether M.K.
had identified Âthe perpetrator, the person that she said came in and touched
her,Â which was answered affirmatively.Â  The State then asked, ÂAnd were you
aware that the perpetrator was out of the home?ÂÂ  This was also answered
affirmatively.Â  King then objected on the basis of rule 704.Â  The trial court
overruled KingÂs objections.Â  In order to preserve error, an objection should
be made as soon as the ground for objection becomes apparent.Â  Lagrone v.
State, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997).Â  Generally, this occurs
when the evidence is admitted.Â  Dinkins v. State, 894 S.W.2d 330, 355
(Tex. Crim. App. 1995).Â  If a party fails to object until after an
objectionable question has been asked and answered, and he can show no
legitimate reason to justify the delay, his objection is untimely and error is
waived.Â  Id.Â  In this instance, King waited until after both
objectionable questions had been asked and answered.Â  King has provided no
reason to justify his delay in objecting.

The two properly preserved objections to the testimony
of M.K.Âs therapist are based on the trial courtÂs purported abuse of
discretion in failing to grant KingÂs motion for mistrial, which was the only
adverse ruling made by the trial court against King in each instance.Â  Mistrial
is appropriate for only Âhighly prejudicial and incurable errors,Â and Âmay be
used to end trial proceedings when faced with error so prejudicial that
Âexpenditure of further time and expense would be wasteful and futile.ÂÂÂ  Hawkins
v. State, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004); Simpson v. State,
119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (quoting Wood v. State, 18
S.W.3d 642, 648 (Tex. Crim. App. 2000)).Â  

The trial court promptly instructed the jury to
disregard the objected-to testimony both times when requested as described
above.Â  See Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (ÂOrdinarily, a prompt instruction to disregard will cure
error associated with an improper question and answer.Â).Â  When a trial court
instructs a jury to disregard certain testimony, we presume that the jury
follows the trial courtÂs instructions.Â  Ladd v. State, 3 S.W.3d 547,
567 (Tex. Crim. App. 1999); cf. Wood, 18 S.W.3d at 648 (noting that a
trial court is required to grant a motion for mistrial only when the improper
question is Âclearly so prejudicial to the defendant and is of such character
as to suggest the impossibility of withdrawing the impression produced on the
minds of the jurors.Â).Â  After reviewing the record, we cannot conclude that
the jury did not follow the trial courtÂs instructions to disregard the
witnessÂs references.Â  This is especially true in light of the fact that during
the re-direct examination by the State, the therapist testified without
objection that M.K. did not appear to be malingering or lying about what she
had told the therapist without objection by King.Â  M.K. had clearly identified
King as the person who had touched her.Â  Additionally, we have determined that
the other objection to the use of the term ÂperpetratorÂ referring to King was
not timely and was waived.Â  We find that the trial court did not abuse its
discretion in denying either of the above motions for mistrial.Â  

Â Â Â Â Â Â Â Â Â Â Â  King further contends that the trial
court abused its discretion by not striking the therapistÂs testimony in its
entirety because of the cumulative nature of the errors.Â  In this regard, King
presents no authority to support his argument that the testimony should have
been stricken in its entirety.Â  Citation to authorities is required in order to
properly present an issue to this Court.Â  Tex.
R. App. P. 38.1.Â  This portion of his issue is inadequately briefed and
is therefore, waived.Â  See Tex.
R. App. P. 38.1(h).Â  We overrule issue three.

Removal of Juror

Â Â Â Â Â Â Â Â Â Â Â  Â  King complains that the trial court
erred by removing a juror during the trial, which resulted in a verdict by only
eleven jurors.Â  King contends that the juror was not disabled, and therefore
the trial court abused its discretion in removing the twelfth juror.Â  During
voir dire, Kamia Davis admitted to knowing King, M.K., and Mary, but only on an
informal basis.Â  Davis affirmed that she could be impartial if selected as a
juror.Â  Davis was impaneled as a juror.

Â Â Â Â Â Â Â Â Â Â Â  On the first day of testimony, the
State presented a witness who testified outside of the presence of the jury
that he knew both King and Davis, and had smoked marijuana with them on two
occasions approximately one year prior to the trial.Â  There were five or six
persons present each time.Â  The trial court questioned Davis in camera
and Davis denied smoking marijuana with King and stood by her answers given
during voir dire.Â  The trial court took no further action at that time.

Â Â Â Â Â Â Â Â Â Â Â  The next day, the State presented two
more witnesses, who were questioned by the trial court as to the relationship
between King and Davis.Â  The first witness, worked with another prospective
juror who had told her about DavisÂs denial of a relationship with King.Â  The
witness testified that she had personally seen King and Davis together under a
tree, which was a local gathering spot for smoking and drinking in a group of
15-20 people, although she did not know if King and Davis had a conversation or
were together.Â  The witness stated that she observed them at the tree Âjust
virtually dailyÂ before King was arrested for these offenses.

Â Â Â Â Â Â Â Â Â Â Â  The prospective juror who had spoken
with the first witness about Davis and King had never met King, but had heard
of him as she lived in the same town as he did.Â  At a break, the prospective
juror asked Davis if she knew King, and Davis said that she did know him, that
he was MaryÂs John.Â  Davis told the prospective juror that KingÂs current
girlfriend, Shae, had approached Davis and told her, ÂDonÂt find my baby
guilty.ÂÂ  Davis told the prospective juror that she had kept walking like she
did not hear ShaeÂs comment.

Â Â Â Â Â Â Â Â Â Â Â  Davis and the prospective juror went
to lunch together on a break during voir dire.Â  Davis told the prospective
juror that she knew him more than what she was letting the trial court know.Â  Davis told her that one day King had stalked a little girl who was about twelve years old,
which was reported by the childÂs father to the sheriffÂs department.Â  Although
King could not be arrested, he was told he could not be in a school zone.Â  Davis also told the prospective juror that King had told her that he had gone to another
city and slept with another girl and that the little girl he had slept with was
his biological child.Â  The prospective juror stated that Davis told her that
King had personally said that he had done that, and that it wasnÂt something
she had heard from someone else.Â  The prospective juror did not know King, nor
had she been around the tree.Â  During voir dire, this prospective juror had
stated that she did not feel that she could be impartial because of the rumors
she had heard about King.

The trial court found that Davis was disabled
because of bias, and discharged her from the jury.Â  King objected to the
dismissal but did not request a mistrial.Â  Based uponÂ our review of the
record, we hold that the trial court did not abuse its discretion by
determining that juror Davis was disabled as that term is used in Article
36.29.Â  We overrule issue four.

Jury Charge ErrorÂ  

King complains that the trial court erred in the
submission of the application paragraph of the charge because it improperly set
forth the mens rea required for conviction in that it allowed the jury to
convict him of indecency with a child for Âintentionally or knowinglyÂ engaging
in sexual contact with M.K., although the proper mens rea for the offense is
the specific intent Âto arouse or gratify the sexual desire of any person.ÂÂ  Tex. Pen. Code Ann. Â§ 21.11(c) (Vernon Supp. 2009). 

Standard of Review

It is undisputed that King did not object to the
charge on this basis.Â  Because there was no objection made to the charge by
King, we must first determine whether the charge as submitted to the jury was
erroneous and if so, we must then analyze this complaint utilizing the standard
of Almanza v. State. Â Allen v. State, 253 S.W.3d
260, 264 (Tex. Crim. App. 2008) (citing Olivas v. State, 202 S.W.3d 137,
143-44 (Tex. Crim. App. 2006), citing Almanza, 686 S.W.2d 157 (Tex.
Crim. App. 1985)).Â  Under Almanza, unobjected-to
jury charge error will not result in reversal of a conviction in the absence of
Âegregious harm.Â Â Almanza, 686 S.W.2d at 171.Â  

In examining the record for egregious harm, we
consider the entire jury charge, the state of the evidence, the final arguments
of the parties, and any other relevant information revealed by the record of
the trial as a whole. Â Olivas, 202 S.W.3d at 144.Â  Jury
charge error is egregiously harmful if it affects the very basis of the case,
deprives the defendant of a valuable right, or vitally affects a defensive
theory.Â  Stuhler v. State, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); Sanchez
v. State, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

Applicable Statutes

The elements of indecency with a child are that
the accused (1) engaged in Âsexual contact,Â (2) with a child, (3) younger than
seventeen years of age, (4) whether the child is of the same or opposite sex.Â  See
id. Â§ 21.11(a)(1).Â  ÂSexual contactÂ means the following acts, if committed
with the intent to arouse or gratify the sexual desire of any person: (1) any
touching by a person, including touching through clothing, of the anus, breast,
or any part of the genitals of a child; or (2) any touching of any part of the
body of a child, including touching through clothing, with the anus, breast, or
any part of the genitals of a person.Â  Id. Â§ 21.11(c).

Analysis

In this case, the abstract portion of the jury
charge provided: ÂOur law provides that a person commits an offense if, with a
child younger than 17 years old and not his spouse, whether the child is the
same or opposite sex, he engages in sexual contact with the child.Â Â It also
defined Âsexual contactÂ as Âany touching of any part of the genitals or
breasts of another person with intent to arouse or gratify the sexual desire of
any person.ÂÂ  Although the abstract portion of the chargeÂ did not use the
terms ÂintentionallyÂ or ÂknowinglyÂ in defining the applicable substantive
law, it included full statutory definitions of ÂintentionallyÂ and Âknowingly.Â

The application portion of the jury charge allowed
the jury to convict King of indecency with a child if it found beyond a
reasonable doubt that Âwith the intent to arouse or gratify [his] sexual
desire, [he] . . . intentionally or knowingly engage[d] in sexual contact with
M.K. by touching her breasts and genitalsÂ on ten separate dates, each
constituting a separate offense.

Because the application paragraph disjunctively
listed the culpable mental states of ÂintentionallyÂ and ÂknowinglyÂ with the
specific intent necessary to complete the offense, the jury could have
convicted King without consideration of whether he acted with the proper mens
rea required by the statute, which constitutes charge error.Â  Bazanes v.
State, 310 S.W.3d 32, 37 (Tex. App.ÂFort Worth 2010, pet. refÂd); see
Jones v. State, 229 S.W.3d 489, 492 (Tex. App.ÂTexarkana 2007, no pet.)
(finding error when charge Âstated that indecency with a child is committed if
the person intentionally or knowingly engages in sexual contact with a childÂ);
see also Rodriguez v. State, 24 S.W.3d 499, 502 (Tex. App.ÂCorpus
Christi 2000, pet. ref'd).Â  Therefore, we will review the record to determine
whether this error could have caused egregious harm to King, considering the
entire jury charge, the state of the evidence, the argument of counsel, and any
other relevant information revealed by the record of the trial as a whole.Â  See
Olivas, 202 S.W.3d at 144; Almanza, 686 S.W.2d at 171.

The Entire Jury Charge

Â Â Â Â Â Â Â Â Â Â Â  The jury charge was otherwise
unexceptional.Â  The abstract portion of the charge correctly set forth the
definition of indecency of a child without including the improper ÂintentionallyÂ
or Âknowingly.ÂÂ  The jury charge as a whole lessens any potential harm suffered
by King.

The State of the Evidence

Â Regarding the state of the evidence, the primary
contested issue at trial was whether M.K.Âs testimony was credible.Â  As we
explained more fully in addressing KingÂs sufficiency of the evidence issues
above, the specific intent required for the offense of indecency with a child
may be inferred from KingÂs conduct, his remarks, and all of the surrounding
circumstancesÂspecifically including M.K.Âs testimony.Â  See McKenzie v.
State, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981). Â The jury, as the sole judge of the credibility of the
witnesses and the weight to be given their testimony, could have inferred that
King had the intent to arouse or gratify his sexual desire from M.K.Âs
testimony about the incidents.Â  See id.

Arguments of Counsel

Â Â Â Â Â Â Â Â Â Â Â  Neither party discussed the precise elements as listed in the charge
during their closing arguments.Â  We find nothing in the closing arguments by
either the State or King that indicates that King was harmed by the error.

Other Information in the Trial as a Whole

Â Â Â Â Â Â Â Â Â Â Â  After a review of the record, we note
that the indictments track the same objectionable language as the charge;
however, King did not challenge the indictment.Â  Any potential error in the
indictment was therefore, waived.Â  See Tex.
Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005).Â  The use of the phrase
Âintentionally and knowinglyÂ was used intermittently during voir dire during
the description of the offense by both the State and King.Â  The StateÂs opening
statement did not include that reference but cited the statute correctly.Â  King
did not refer to it at all during his opening statement.Â  We do not find that
the trial as a whole more than minimally increased any potential harm to King.

Â Â Â Â Â Â Â Â Â Â Â  We do not find that King was
egregiously harmed by the erroneous inclusion of the terms Âintentionally and
knowinglyÂ in the jury charge.Â  We overrule issue five.

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  We find that the evidence was both
legally and factually sufficient for the jury to have found King guilty of the
offenses.Â  We find that the trial court did not abuse its discretion in the
admission of the testimony of the therapist.Â  We find that the trial court did
not abuse its discretion in the discharge of juror Davis.Â  We find that while
there was error in the jury charge, King was not egregiously harmed by that
error.Â  We affirm the judgments of the trial court.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TOM
GRAY

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Before Chief Justice
Gray,

Â Â Â Â Â Â Â Â Â Â Â  Justice
Reyna, and

Â Â Â Â Â Â Â Â Â Â Â  Justice Davis

Affirmed

Opinion delivered and
filed September 1, 2010

Do not publish

[CRPM]