**BALL, BALL & BROSAMER, INC., Appellant,**

v.

**Robert B. REICH, Secretary of Labor, et al., Appellees.**

No. 92–5366.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 2, 1994.

Decided June 10, 1994.

---

John R. Little, Jr., Boulder, CO, argued the cause for appellant. With him on the briefs was G. Henry Seaks, Denver, CO.

Charles F. Flynn, Asst. U.S. Atty., Washington, DC, argued the cause for appellees. With him on the brief were Eric H. Holder, Jr., U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., and Marva Peace–Jackson, Atty., U.S. Dept. of Labor, Washington, DC.

On the brief for amicus curiae Associated General Contractors of America were William A. Isokait, Silver Spring, MD, Charles E. Murphy, and Robert P. Casey, Chicago, IL.

Before EDWARDS, BUCKLEY, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellant Ball, Ball & Brosamer, Inc. ("Ball") appeals from an order of the district court granting summary judgment in favor of the Secretary of Labor in an action to review the Secretary's determination that Ball and its subcontractor violated the Davis–Bacon Act while performing work on a federal construction project. Ball maintains that the district court erred in concluding that the terms of its contract with the government barred judicial review of its claims and that the regulations under which the Secretary acted were a reasonable interpretation of the Davis–Bacon Act. For the reasons set forth below, we conclude that appellant is correct on both counts and order the district court to enter summary judgment in Ball's favor.

## I. BACKGROUND

In September 1985, Ball entered into a $14.5 million contract with the Department of Interior's Bureau of Reclamation to construct thirteen miles of the Tucson Aqueduct between Phoenix and Tucson, Arizona. Ball subcontracted with Red Rock Products, Inc., an Arizona-based company, for the concrete and gravel it needed for the project. Red

Rock obtained raw materials from a local sand and gravel pit and set up a portable batch plant for mixing concrete. The borrow pit and batch plant were located about two miles from the construction site at its nearest point.

The Wage and Hour Division of the Department of Labor began an investigation to determine whether Red Rock's pay practices conformed with the Davis–Bacon Act, 40 U.S.C. § 276a(a) (1988). The Act requires generally that laborers and mechanics under covered government contracts will be paid at least the prevailing wages for corresponding classes in the area of performance of the contract as determined by the Secretary of Labor. *See id.* By its terms, it applies to "all mechanics and laborers employed *directly upon the site of the work.*" *Id.* (emphasis added). The Division found Red Rock's employees to be covered by the Act. As the Division also found that they had not received prevailing wages, it concluded that Red Rock and Ball[1] had violated the Act. The Division notified the Bureau of Reclamation of its findings, and the Bureau of Reclamation withheld $60,976.71 from the contract price owed to Ball for back wages relating to the alleged Davis–Bacon violations. *See id.* §§ 276a(a) & 276a–2(a) (authorizing withholding and repayment of wages due under Act).

Ball filed a petition for review with the Wage Appeals Board,[2] arguing that the Red Rock batch plant and borrow pit were not "directly upon the site of the work" within the meaning of the Act. The Board denied the petition, stating that the facts of record supported a finding that Red Rock's borrow pit and batch plant were on the site of the work, as the Secretary's regulations define that phrase. The Secretary's regulations provide:

Except as provided in paragraph (*l*)(3) of this section, fabrication plants, mobile factories, batch plants, borrow pits, job headquarters, tool yards, etc., are part of the *site of the work* provided they are dedicated exclusively, or nearly so, to performance of the contract or project, and are so located in proximity to the actual construction location that it would be reasonable to include them.

29 C.F.R. § 5.2(*l*)(2) (1993).

After the Wage Appeals Board denied the petition for review, Ball brought suit in the U.S. District Court for the District of Columbia. On cross-motions for summary judgment, the District Court ruled in favor of the Secretary. *See Ball, Ball & Brosamer, Inc. v. Martin,* 800 F.Supp. 967 (D.D.C.1992). The district court first held that Ball's challenge to the validity of the Secretary's regulations was precluded by the terms of its contract with the government. Paragraph I.7.9 of Ball's contract with the Bureau of Reclamation, referred to by the parties as the "incorporation clause," provided that "[a]ll rulings and interpretations of the Davis–Bacon and Related Acts contained in 29 C.F.R. Parts 1, 3, and 5 are herein incorporated by reference in this contract." The district court accepted the Secretary's position that in the incorporation clause, Ball agreed to abide by the Secretary's definition of "site of the work" found in Part 5 of the regulations and therefore could not challenge the regulations as inconsistent with the Davis–Bacon Act. *Id.* at 971–73.

The district court also held that even if Ball were not contractually precluded from bringing its challenge, the Secretary's regulations at § 5.2(*l*)(2) were a reasonable interpretation of the statutory phrase "directly upon the site of the work." *Id.* at 975. In so holding, the district court rejected Ball's argument that this court's opinion in *Building & Construction Trades Dep't., AFL–CIO v. United States Dep't. of Labor Wage Appeals Board,* 932 F.2d 985 (D.C.Cir.1991) (the

---

1. As the prime contractor, Ball was equally responsible for the repayment of unpaid wages to Red Rock's workers. *See Northern Colorado Constructors, Ltd.,* WAB Case No. 86–31 (Dec. 14, 1987) ("the Davis–Bacon Act itself creates a contractual obligation on the part of the prime contractor to pay the sums which its subcontractor owes to the subcontractor's employees").

2. Ball also filed a complaint in the United States Court of Claims seeking release of the funds being withheld under the contract, but those proceedings were suspended pending review of the Division's decision by the Wage Appeals Board.

"*Midway*" decision), required a strict geographical proximity test for evaluating what areas are "directly upon the site of the work" for purposes of the Davis–Bacon Act. *Id.* at 973–75.

## II. DISCUSSION

### A. Standard of Review

Because the parties agree that there are no genuine issues of material fact in dispute here, this court's only task on appeal is to ensure that the district court properly applied the relevant law to the undisputed facts. *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 284 (D.C.Cir.1993). Like the district court, our review of the Secretary's conclusion that Ball violated the Davis–Bacon Act is limited to determining whether the Secretary's decision was arbitrary, capricious, or contrary to law within the meaning of the APA. *Dr. Pepper/Seven–Up Companies v. FTC*, 991 F.2d 859, 862 (D.C.Cir. 1993); 5 U.S.C. § 706(2)(A) (1988). We examine de novo the legal question whether judicial review of Ball's claims can be limited pursuant to the terms of its contract with the government. *See HOH Co. v. Travelers Indem. Co.*, 903 F.2d 8, 12 n. 6 (D.C.Cir.1990).

### B. The Reviewability of Ball's APA Claims

■ Paragraph I.7.9 of Ball's contract with the Bureau of Reclamation incorporated by reference "[a]ll rulings and interpretations of the Davis–Bacon and Related Acts contained in 29 C.F.R. Parts 1, 3, and 5." The incorporation clause was included in the contract pursuant to the Secretary's regulations at 29 C.F.R. § 5.5(a), which expressly require government agencies

> *to insert in full* in any contract in excess of $2,000 ... for the actual construction ... of a ... public work ... which is subject to the labor standards provisions of any of the acts listed in § 5.1, [including the Davis–Bacon Act] *the following clauses* ...:

> •       •       •       •

> (8) ... All rulings and interpretations of the Davis–Bacon and Related Acts contained in 29 CFR parts 1, 3, and 5 are

herein incorporated by reference in this contract.

29 C.F.R. § 5.5(a) (emphasis added). The consequences for a contractor who refuses to include this clause are also spelled out in the Secretary's regulations: the contractor will not receive payment for work performed under the contract. *See id.* § 5.6(a)(1).

The Secretary contends that the effect of the mandatory incorporation clause is to bar Ball, as a matter of contract, from challenging the validity of § 5.2(*l*)(2). This application of the incorporation clause forecloses all judicial review of the validity of the Secretary's regulations when those regulations are later applied to a particular contractor in an adjudicatory setting. Such an attempt to limit judicial review runs counter to the fundamental principles of reviewability underlying the Administrative Procedure Act.

The Administrative Procedure Act "embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U.S.C. § 702, so long as no statute precludes such relief or the action is not one committed by law to agency discretion." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). Because of this "well-settled presumption" in favor of judicial review, *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 496, 111 S.Ct. 888, 898, 112 L.Ed.2d 1005 (1991), "clear and convincing evidence" of a legislative intention to preclude judicial review is required before we presume that Congress intended to foreclose judicial examination of the legality of administrative action. *Reno v. Catholic Social Servs., Inc.*, ——— U.S. ———, ———, 113 S.Ct. 2485, 2499, 125 L.Ed.2d 38 (1993).

An agency can neither adopt regulations contrary to statute, nor exercise powers not delegated to it by Congress. The Secretary, therefore, cannot adopt regulations erasing the presumption of reviewability embodied in the APA unless the Davis–Bacon Act reveals "clear and convincing evidence" that Congress intended to foreclose judicial review of the Secretary's regulations under the Act when those regulations are applied in later

adjudicatory proceedings. Since we find nothing in the Act indicating such to be the case, we agree with appellants that the incorporation clause should not be read to preclude judicial review. Insofar as the incorporation clause purports to shield the Secretary's regulations from APA review in the courts, it is invalid and unenforceable.

The Secretary contends that the Ninth Circuit's opinion in *Woodside Village v. United States Dep't. of Labor,* 611 F.2d 312 (9th Cir.1980) (per curiam), counsels a different result. In *Woodside,* the court held that a contractor who agreed to pay Davis–Bacon wages was still required to honor that obligation during the period in which a Presidential Proclamation suspending the Act was in effect, since "[n]othing in the Davis–Bacon Act precludes the parties from contracting with reference to it, even if by proper interpretation its requirements may not have been applicable by force of law to the project in question." *Id.* at 315. While we might agree with the *Woodside* court that nothing in the Davis–Bacon Act broadly precludes the parties from contracting with reference to it, at the same time, nothing in the Act *specifically authorizes* the Secretary to promulgate regulations requiring contractors to agree to waive judicial review normally available under the APA as a prerequisite to obtaining payment under their contracts with the government. *Woodside* is therefore inapposite.

In short, we conclude the district court erred in entering summary judgment against Ball on this ground.

## C.  Ball's APA Claims

■ Because Ball's challenge was properly before the district court, we now turn to the merits of the claim that the Secretary's regulations at § 5.2(*l*)(2) are inconsistent with the Davis–Bacon Act. Our review of Ball's statutory challenge is governed by the rules laid down in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We first determine whether "Congress has directly spoken to the precise question at issue," *id.* at 842, 104 S.Ct. at 2781, looking to the " 'statutory language at issue, as well as

the language and design of the statute as a whole.' " *School Dist. of Hatboro–Horsham v. Alexander,* 981 F.2d 1265, 1267 (D.C.Cir. 1992) (quoting *Chemical Mfrs. Ass'n v. EPA,* 919 F.2d 158, 162 (D.C.Cir.1990)). If we find that Congress has spoken to the precise question at issue "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781. Only if the statute is ambiguous or silent with respect to the matter in question do we proceed to step two of the *Chevron* analysis and assess whether the Secretary's interpretation is reasonable in light of the "language, legislative history, and policies of the statute." *Natural Resources Defense Council v. EPA,* 822 F.2d 104, 111 (D.C.Cir.1987).

The Secretary concluded that Red Rock employees were subject to the prevailing wage provisions of the Davis–Bacon Act because Red Rock's borrow pit and batch plant "met the functional and geographical tests for coverage" under § 5.2(*l*)(2) of the Secretary's regulations. As noted above, § 5.2(*l*)(2) includes borrow pits and batch plants within "the site of the work" if the facilities are "dedicated exclusively, or nearly so, to performance of the contract or project, and are so located in proximity to the actual construction location that it would be reasonable to include them." 29 C.F.R. § 5.2(*l*)(2). Ball contends that the Secretary's inclusion of workers at off-site facilities is inconsistent with the plain language of § 276a(a) of the Davis–Bacon Act, which requires the payment of prevailing wages only to "mechanics and laborers employed directly upon the site of the work." We agree.

In *Midway,* a government contractor challenged the Secretary's determination that truckdrivers were entitled to prevailing wages under the Davis–Bacon Act when those drivers were employed by the contractor to move off-site materials to the actual location of the federally-funded construction project. 932 F.2d at 987–88. The Secretary's conclusion that the truckdrivers were covered by the Act rested on 29 C.F.R. § 5.2(j), which defined the Act's coverage as extending to "the transporting of materials

and supplies to or from the building." *Id.* at 987 (emphasis deleted). Utilizing the *Chevron* framework, we considered whether the regulation was consistent with the language of the Davis–Bacon Act. We found "no ambiguity in the text," *id.* at 990, and thought it clear that "the ordinary meaning of the statutory language is that the Act applies only to employees working *directly on the physical site of the public building or public work under construction.*" *Id.* (emphasis added). Thus, we found no need to proceed to step two of the *Chevron* analysis and invalidated § 5.2(j) at *Chevron* step one to the extent that it included off-site material delivery truckdrivers within the Act's coverage. *Id.* at 992.

Our opinion in *Midway* twice cautioned that the validity of the Secretary's definition of the "site of the work" at § 5.2(*l* )(2) was not before us, since it had not been challenged in the case. *Id.* at 989 n. 6 & 991 n. 12. That issue is squarely before the court today, and the reasoning in *Midway* obviously bears on the validity of § 5.2(*l* )(2) to the extent that the regulation purports to extend the coverage of the Davis–Bacon Act beyond the actual physical site of the public building or public work under construction.

The Secretary maintains that the regulations at § 5.2(*l* )(2) satisfy the geographic limiting principle of the Davis–Bacon Act and *Midway*. This might be the case if the Secretary were applying the regulatory phrase "so located in proximity to the actual construction location that it would be reasonable to include them" only to cover batch plants and gravel pits located in actual or virtual adjacency to the construction site. *See* 29 C.F.R. § 5.2(*l* )(1). But such an application is not before us and we express no opinion on its validity. Instead, the Secretary attempts to find any tiny crack of ambiguity remaining in the phrase "directly upon the site at the work" and cram into it a regulation that encompasses other sites miles

from the actual location of the public works—in this case two miles, in another as much as 24 miles and in still another, 3,000 miles from the actual construction location. *See Ross Bros. Const., Inc.,* WAB Case No. 87–36 (Nov. 21, 1988) (sand and gravel facility 24 miles from construction location); *In re ATCO Const., Inc.,* WAB Case No. 86–1 (Aug. 22, 1986) (including fabrication facility for modular housing units located in Portland, Oregon in construction site on Adak Island, Alaska). In *Midway,* we determined "not surprisingly, that Congress intended the ordinary meaning of its words." 932 F.2d at 992. That is, the limitation in the statute making it applicable to " 'mechanics and laborers employed directly upon the site of the work' restricts coverage of the Act to employees who are working directly on the physical site of the public building or public work being constructed." *Id.* The Secretary invites us to revisit *Midway*'s conclusion that the statutory phrase "directly upon the site of the work" is unambiguous in the context of this controversy, asking for a "broad construction" of the Act to accomplish its "remedial purposes" and citing policy arguments favoring a broadly defined federal work site. None of this offers any justification for ignoring the clear language of the Act. *See Central Bank of Denver v. First Interstate Bank of Denver,* —— U.S. ——, ——, 114 S.Ct. 1439, 1453–54, 128 L.Ed.2d 119 (1994) ("Policy considerations cannot override our interpretation of the text and structure of the Act, except to the extent that they may help to show that adherence to the text and structure would lead to a result 'so bizarre' that Congress could not have intended it.").

The Secretary's further argument that we should reconsider *Midway* in light of our purported misreading of the relevant legislative history [3] is also unconvincing. We disposed of *Midway* on *Chevron* step one grounds and noted only in passing that the

---

**3.** Both Ball and the Secretary note that footnote 9 of our opinion in *Midway* misquotes the original 1931 version of the Davis–Bacon Act. *Compare Midway,* 932 F.2d at 990 n. 9 ("mechanics and laborers employed directly upon the site of the public building or public work") *with* Act of March 3, 1931, ch. 411, 46 Stat. 1494 ("laborers and mechanics employed by the contractor or any subcontractor on the public buildings covered by the contract"). Instead, it was the 1935 amendments to the Act, rather than the original 1931 version, which adopted the "site of the work" phraseology.

"little legislative history," 932 F.2d at 991, "support[ed] the plain meaning of the text that off-site mechanics and laborers are not covered by the Act," *id.* at 990.

In the end, we reach the same conclusion we did in *Midway*. The statutory phrase "employed directly upon the site of the work," means "employed directly upon the site of the work." Laborers and mechanics who fit that description are covered by the statute. Those who don't are not.

### III. CONCLUSION

Because the Secretary's regulations under which Ball was held liable are inconsistent with the Davis–Bacon Act, summary judgment should be entered in Ball's favor. The district court's order of summary judgment is accordingly vacated and remanded for further action consistent with this opinion.

*It is so ordered.*