**L.P. CAVETT CO., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF LABOR, et al., Defendants.**

No. C–1–93–0656.

United States District Court,
S.D. Ohio,
Western Division.

July 20, 1995.

---

Paul Dunbar Rice, Rice & Ladrigan, LPA, Cincinnati, OH, for L.P. Cavett Co.

James Millard Coombe, Asst. U.S. Atty., Cincinnati, OH, for defendants.

Peter Mark Fox, Kircher Robinson Cook Newman & Welch, Paul Dunbar Rice, Rice & Ladrigan, Cincinnati, OH, Terry R. Yellig, Sherman Dunn Cohen Leifer & Yellig, PC, William A. Isokait, Washington, DC, for amicus Building & Constr. Trades Dept., AFL–CIO.

## ORDER

STEINBERG, United States Magistrate Judge.

This matter is before the Court on Plaintiff L.P. Cavett Company's motion for summary judgment (Doc. 9), Defendant United States Department of Labor's motion for summary judgment (Doc. 10), the parties' responsive memoranda and joint statement of stipulated facts (Docs. 11, 12, 18, 20, 22), *amicus curiae* Building and Construction Trades Department, AFL–CIO's memorandum in support of the Department of Labor's motion (Doc. 14), *amicus curiae* Associated General Contractors of America, Inc.'s memorandum in support of Cavett's motion (Doc. 19), and the parties' post-hearing submissions. (Docs. 28, 29). The parties have consented to entry of final judgment by the United States Magistrate Judge.

Cavett initiated this appeal of a July 20, 1993 Wage Appeals Board Decision that the prevailing wage requirement of the Davis–Bacon Act applies to truck drivers hauling asphalt from a temporary batch plant to a highway construction project. Relying on *Building and Construction Trades Dep't v. Dep't of Labor (Midway Excavators, Inc.)*, 932 F.2d 985 (D.C.Cir.1991) and *Ball, Ball & Brosamer, Inc. v. Reich*, 24 F.3d 1447 (D.C.Cir.1994), Cavett contends that 29 C.F.R. § 5.2(1)[1], the regulation upon which the Wage Appeals Board based its decision, is inconsistent with the Davis–Bacon Act, 40 U.S.C. § 276a, and is invalid. Cavett contends that the truck drivers were not employed "directly on the site of the work;" therefore, they are not covered by the Davis–Bacon prevailing wage requirements.

The Department contends that 29 C.F.R. § 5.2(*l*) is valid, that the Board's determination is consistent with the Department's longstanding position on this issue, and that the batch plant satisfies the geographical and functional requirements of the regulation. The Department also contends that the contract under which the truck drivers in this case were working is governed by the Federal–Aid Highways Act, 23 U.S.C. § 113, rather than the Davis–Bacon Act, and is not subject to a "directly upon the site of the work" limitation.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 21, 1985, Cavett submitted a bid as general contractor for the reconstruction

---

1. Although the Administrator's Decision refers to 29 C.F.R. § 6.2(*l*)(2) and the parties have framed the issue as a determination of the validity of 29 C.F.R. § 5.2(*l*)(2), this subsection of § 5.2(*l*) cannot be read apart from subsections § 5.2(*l*)(1) and (*l*)(3). Thus, the regulation at issue is 29 C.F.R. § 5.2(*l*), which includes subsections (1), (2), and (3).

of a 10.833 mile length of State Road 3 in Rush County, Indiana. (A.R. 91). On June 10, 1985, the Indiana Department of Highways awarded Highway Contract R–15309 to Cavett. The contract specified surface and shoulder removal, widening the highway, and resurfacing with bituminous mix. (A.R. 91, 179). At a June 12, 1985 pre-construction conference, representatives of Cavett and the Indiana Department of Highways decided that a bituminous plant would be established at Rush County Stone Company, a commercial quarry, located approximately three miles from the midpoint of the highway to be reconstructed. (A.R. 196, 223). United Asphalt, a Cavett affiliate, set up the batch plant for the State Road 3 project. (A.R. 132). Rush County Stone Company supplied the coarse aggregate for the bituminous mix. (A.R. 132, 141, 142). As shown by Indiana Department of Highways inspection reports, the batch plant was in operation from August 9, 1985 to November 18, 1985 on the State Road 3 project.[2] (A.R. 135, 141, 142).

Previously, from August 15, 1984 to April 26, 1985, United Asphalt established a batch plant at Rush County Stone Company relative to a different construction contract. (A.R. 55, 132). There are no inspection reports available showing whether the batch plant was located there from April 26, 1985 to June 24, 1985. (A.R. 55). Cavett contends that the batch plant was physically located at Rush County Stone Company for that time period. (Id.). From June 24, 1985 to July 24, 1985, the batch plant was located at Harris City relative to a third construction contract. (A.R. 55, 143, 144). Sometime between July 24, 1985 and August 9, 1985, the batch plant was relocated to Rush County Stone Company to begin work on the State Road 3 project. (A.R. 55). In late fall 1985, the batch plant was disassembled. (A.R. 132).

On June 1, 1985, Cavett entered into a contract with St. John's Trucking Company to haul materials, supplies, and equipment from June 1, 1985 to November 15, 1985. (A.R. 137). The contract did not contain a Davis–Bacon prevailing wage standards provision. Pursuant to the contract, St. John's employees excavated damaged road areas with a backhoe, removed old asphalt and other material from the construction site, and delivered new asphalt from the batch plant to the State Road 3 project. St. Johns's employees were not paid at the Davis–Bacon prevailing wage rates.

In 1988, the Department of Labor initiated an investigation of the State Road 3 project. (A.R. 50). On May 16, 1989, the Wage and Hour Administrator issued a ruling that the employees should have been paid at the prevailing wage rate in accordance with 29 C.F.R. § 5.2($l$)(2). (A.R. 39, 42). The Administrator found that the batch plant was established after the contract was awarded, that the batch plant was three to five miles from the construction site, and that the material produced at the batch plant was furnished exclusively, or nearly so, to the contract work. (A.R. 43).

Cavett agreed to pay the prevailing wage rate to the backhoe operator and truck drivers removing old asphalt from the site, but not to the truck drivers delivering new asphalt to the site. (A.R. 52). On the latter issue, Cavett appealed the Administrator's decision that these workers were covered by the Davis–Bacon Act. (A.R. 2). On May 31, 1989, the Board affirmed the Administrator's ruling. (A.R. 242). Cavett requested reconsideration in view of the District of Columbia Circuit's May 17, 1985 decision in *Building and Construction Trades Dep't v. Dep't of Labor (Midway Excavators, Inc.)*, 932 F.2d 985 (D.C.Cir.1991). The Wage Appeals Board reaffirmed the Administrator's ruling on the ground that 29 C.F.R. § 5.2($l$), as a duly promulgated Department of Labor regulation, is binding on it. (A.R. 396). The Board also found that the batch plant satisfied both the geographical and functional tests of 29 C.F.R. § 5.2($l$). (A.R. 397). Cavett filed this action on September 22, 1993.

## STANDARD OF REVIEW

■ A motion for summary judgment should be granted if the evidence submitted

---

2. In Indiana, each time a batch plant used in highway construction is moved or the aggregate is changed, the plant is inspected by an Indiana Department of Highways inspector. (A.R. 55)

to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Under the Administrative Procedure Act, judicial review of a Wage Appeals Board's decision is limited to the question whether the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The reviewing Court should examine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971).

■ This Court's review of Cavett's challenge to 29 C.F.R. § 5.2(1) is governed by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The initial question to be asked is whether Congress has "directly spoken to the precise question at issue." Id. at 842, 104 S.Ct. at 2781. "If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842–43, 104 S.Ct. at 2781. "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843, 104 S.Ct. at 2782. "The Court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading that the court would have reached if the question initially had arisen in a judicial proceeding." Id. at 843, n. 11, 104 S.Ct. at 2782, n. 11.

**3.** The Act was amended generally in 1935, in 1940 to add the Alaska and Hawaii Territories, in 1960 to eliminate the Alaska and Hawaii Territories, and in 1964 to include fringe benefits in prevailing wages.

## STATUTORY AND REGULATORY FRAMEWORK

■ The Davis–Bacon Act, 40 U.S.C. § 276a, was passed in 1931. As presently written [3], it states that for contracts involving federal construction projects "all mechanics and laborers employed directly on the site of the work" shall be paid at the local prevailing wage rate. The dual purposes of the Act are to give local laborers and contractors fair opportunity to participate in building programs when federal money is involved and to protect local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the area. *See* S.Rep. No. 963, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.C.C.A.N. 2339, 2340. The 1932 House Hearings and House Debates indicate the concern of at least some members of Congress that the Act's purpose is not to regulate the wages of private industry, and that the Act should not have that unintended effect. *See Midway Excavators, Inc.,* 932 F.2d at 991, n. 11, 12 (citing *House Hearings before the Committee on Labor on S. 3874 and H.R. 11865,* 183–84 (1932) and 75th Cong.Rec. 12366 (1932)). With regard the Act's 1964 amendment, the Senate Report includes a discussion entitled "Why The Davis–Bacon Act Became Law":

> ... Originally it applied only to direct Federal construction. With the development of Federal grant, loan, and guarantee programs, Congress has extended the prevailing wage standards from time to time to insure that public money is not spent to depress the locally prevailing wage structure. The Davis–Bacon Act and its related statutes thus have the objective of affording protection to federally assisted projects as well as projects under direct Federal contracts.

S.Rep. No. 963, 88th Cong., 2d Sess. (1964), *reprinted in* U.S.C.C.A.N. 2339, 2340–41.

The Federal–Aid Highways Act, 23 U.S.C. § 101 *et seq.,* was passed in 1958. As presently written [4], 23 U.S.C. § 113, entitled

**4.** Section 113 was amended in 1968 to cover all federal highway projects rather than only the interstate system, in 1983 to strike out "initial" after "subcontractors on the", in 1987 to substitute "August 30, 1935" and "267a" for "March

"Prevailing Rate of Wage," states that on highway system construction contracts involving federal aid, all laborers and mechanics shall be paid at the local prevailing wage rate as determined by the Secretary of Labor in accordance with the Davis–Bacon Act. The Act rewrote the existing federal highway laws, the first of which was passed as early as 1916, in an orderly and logical arrangement. S.REP. No. 1928, 85th Cong., 2d Sess. (1958), *reprinted in* 1958 U.S.C.C.A.N. 3942, 3943. The Act "was not intended to change any of the fundamental and underlying concepts of existing Federal highway legislation or to make any changes of real substance." Id. The purpose of the Act is to improve the nation's highway system to meet the needs of national defense and interstate commerce. 23 U.S.C. § 101(b). In order to effect this purpose, the Act offers federal aid to state and local bodies which construct these approved highways. *D.C. Federation of Civic Ass'ns, Inc. v. Airis*, 391 F.2d 478 (D.C.Cir. 1968). With regard to the 1968 amendment to the Act, the Senate Report contains the following language:

The Davis–Bacon Act was passed in 1935 to preclude Government construction projects from lowering prevailing wages. Initially, only the construction contracts by the so-called procurement agencies ... came under the purview of the act. Subsequently, various Federal assistance construction programs were enacted, all containing provisions requiring the predetermination of prevailing wage rates for construction workers employed on the program projects. The Highway Act of 1956 extended Davis–Bacon protection to highway workers on Interstate System projects, and the Appalachian Act provided this coverage for all highway construction under that program.

At present the wage protection provided by the Davis–Bacon Act extends to construction workers on virtually all Federal construction programs.... The major exception is the regular Federal-aid highway construction program. The committee can find no reasonable basis for this exception ... the need to place Federal construction

programs and the wages of workers on a comparable and equitable basis with other Federal construction practices far outweighs the cost and possible administrative difficulties.

S.REP. No. 1340, 90th Cong., 2d Sess., (1968), *reprinted in* 1968 U.S.C.C.A.N. 3482, 3496–97.

In 1941, the Secretary of Labor issued regulations to coordinate the administration and enforcement of labor standards provisions for the Davis–Bacon Act and Davis–Bacon Related Acts, including the later enacted Federal–Aid Highways Act. *See Midway Excavators, Inc.*, 932 F.2d at 987; 29 C.F.R. § 5.1(a). Included is the definition of the term "site of the work:"

(1) The *site of the work* is limited to the physical place or places where the construction called for in the contract will remain when work on it has been completed and, as discussed in paragraph (*l*)(2) of this section, other adjacent or nearby property used by the contractor or subcontractor in such construction which can reasonably be said to be included in the *site*.

(2) Except as provided in paragraph (*l*)(3) of this section, fabrication plants, mobile factories, batch plants, borrow pits, job headquarters, tool yards, etc. are part of the *site of the work* provided they are dedicated exclusively, or nearly so, to the performance of the contract or project, and are so located in proximity to the actual construction location that it would be reasonable to include them.

(3) Not included in the *site of the work* are permanent home offices, branch plant establishments, fabrication plants, and tool yards of a contractor or subcontractor whose locations and continuance in operation are determined wholly without regard to a particular Federal or federally assisted contract or project. In addition, fabrication plants, batch plants, borrow pits, job headquarters, tool yards, etc., of a commercial supplier or materialman which are established by a supplier of materials for the project before the opening of bids and

3, 1931" and "276a," and in 1991 to substitute "highways" for "systems, the primary and sec-

ondary, as well as their extension in urban areas, and the Interstate System."

not on the project site, are not included in the *site of the work.* Such permanent, previously established facilities are not a part of the *site of the work,* even where the operations for a period of time may be dedicated exclusively, or nearly so, to the performance of a contract.

29 C.F.R. § 5.2(*l*). (emphasis in original).

## OPINION

### The Davis–Bacon Act, Not The Federal–Aid Highways Act, Is The Controlling Statute

■ The Department contends that the State Road 3 construction contract is covered by the Federal–Aid Highways Act, rather than by the Davis–Bacon Act. The Department further contends that since the Federal–Aid Highways Act contains no language limiting "site of the work," 29 U.S.C. § 5.2(*l*) is a permissible construction thereunder.

The only case cited by the parties directly on this issue is *Wheeler v. Graco Trucking Corp.,* 1991 WL 243615 (E.D.Pa. Nov. 14, 1991). There, the District Court for the Eastern District of Pennsylvania held that 29 C.F.R. § 5.2(j) was a permissible construction of the term "construction" under the Federal–Aid Highways Act, differentiating between the Federal–Aid Highways Act and the Davis–Bacon Act because of the former's lack of location-specific language. On appeal, however, the Third Circuit reversed the District Court's decision on other grounds, specifically stating that it was not reaching the question concerning the District Court's interpretation of the Federal–Aid Highways Act. 985 F.2d 108, 109 (3rd Cir.1993). *Midway Excavators, Inc.* involved a contractor working on several federally funded construction projects subject to the Davis–Bacon Act and Davis–Bacon Related Acts, including the Federal–Aid Highways Act. 932 F.2d at 987, n. 2. The District of Columbia Circuit's analysis in that case focused on the validity of 29 C.F.R. § 5.2(*l*) under the Davis–Bacon Act, rather than under the Federal–Aid Highways Act.

The Federal–Aid Highways Act and the many other Davis–Bacon Related Acts enumerated at 29 C.F.R. § 5.1(a) incorporate the method of determining prevailing wage rates under the Davis–Bacon Act. *See* 23 U.S.C. § 113(a); *see also* 29 C.F.R. § 5.1(a). The legislative history of the Federal–Aid Highways Act indicates that laborers performing work on federally funded highway construction projects are to be given the same wage protection as those laborers covered by the Davis–Bacon Act. S.REP. No. 1340, 90th Cong., 2d Sess., (1968), *reprinted in* 1968 U.S.C.C.A.N. 3482, 3496–97. To eliminate the "site of the work" requirement incorporated into the Federal–Aid Highways Act by 29 C.F.R. Part 5 (*see* Doc. 18, p. 2), would give laborers performing work on federally funded highway construction projects more protection than laborers performing work on federally funded non-highway construction projects, a result not contemplated by Congress.

Therefore, we shall determine the validity of 29 C.F.R. § 5.2(*l*) under the Davis–Bacon Act, rather than under the Federal–Aid Highways Act.

### The Scope Of The Davis–Bacon Act Is Ambiguous Regarding Highway Construction Work

■ The words in a statute are to be given their ordinary meaning. *E.g., United States National Bank of Oregon v. Independent Insurance Agents of America,* —— U.S. ——, ——, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993). Furthermore, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 1504, 103 L.Ed.2d 891 (1989). In determining Congressional intent, the court should employ the traditional tools of statutory construction, including a review of a statute's legislative history. *See Chevron,* 467 U.S. at 843, n. 9, 104 S.Ct. at 2781–82; *Midway Excavators, Inc.,* 932 F.2d at 990; *see also Nationwide Mutual Insurance Co. v. Cisneros,* 52 F.3d 1351 (6th Cir.1995); *but see Jewish Hospital v. Secretary of Health and Human Services,* 19 F.3d 270, 274 (6th Cir.1994). At first blush, it might appear that the question of whether a statute is ambiguous may be resolved without refer-

ence to the underlying facts of the case in which the statute is applied. Statutes, however, are not read in a vacuum. The question of whether or not a statute is ambiguous is inextricably intertwined with the facts of the case giving rise to the question in the first place.

■ The Davis–Bacon Act covers "all mechanics and laborers employed directly on the site of the work." If the phrase "directly on the site of the work" has a plain meaning, that meaning is the physical place where the construction called for in the contract will remain when work on it has been completed. *See* 29 C.F.R. § 5.2(*l*)(1). In the case of the building construction, there may be ample space for laborers to perform the construction work on the lot where the completed building will stand. In the case of the construction of a highway, however, which by its nature is long and narrow and requires large amounts of construction material[5], the site of the construction work must, by necessity, spill over onto nearby areas, although these areas are outside the land occupied by the final construction work. *See Administration of the Davis–Bacon Act: Hearings Before the Special Subcomm. on Labor of the House Comm. on Education and Labor,* 87th Cong., 2d Sess. 831 (1962). Thus, we find that with regard to highway and other construction projects such as aqueducts, bridges, and dams, the phrase "directly upon the site of the work" is ambiguous.

The two cases Cavett cited in support of its position that the language in the Davis–Bacon Act is unambiguous are not persuasive. *Midway Excavators, Inc.,* 932 F.2d 985 (D.C.Cir.1991), wherein the District of Columbia Circuit found 29 C.F.R. § 5.2(j) to be inconsistent with the Davis–Bacon Act, involved truck drivers who obtained supplies from various independent commercial suppliers up to 25 miles away from the job site, transported the materials to the job site, and unloaded the supplies. Id. at 988. The drivers remained on the site of the work only long enough to drop off their loads, usually for not more than ten minutes at a time. Id.

The drivers also hauled materials for other contractors on non-federal projects. Id. In the present action, the truck drivers transported asphalt not from commercial suppliers, but from a batch plant only a few miles away from the construction site and dedicated exclusively to preparing the asphalt to be laid down on the highway under reconstruction. Thus, *Midway Excavators, Inc.* is distinguishable on the facts.

*Ball, Ball & Brosamer v. Reich,* 24 F.3d 1447 (D.C.Cir.1994), involved laborers working at a gravel borrow pit and portable batch plant for mixing concrete relative to the construction of a thirteen mile length of aqueduct. Id. at 1448–49. The borrow pit and batch plant were two miles from the construction site at its nearest point. Id. at 1449. We find the holding of the *Ball* Court to be unclear. On the one hand, the opinion concludes that 29 C.F.R. § 5.2(*l*)(2) is inconsistent with the plain meaning of the Davis–Bacon Act. Id. at 1453. On the other hand, the Court acknowledges that 29 C.F.R. § 5.2(*l*) would satisfy the geographic limiting principle of the Davis–Bacon Act if the Secretary applied the regulatory phrase to cover batch plants located in "actual or virtual adjacency" to the construction site. Id. at 1452. The *Ball* Court was perturbed by the Secretary's attempt to "cram" into the regulation sites as far away as 3,000 miles from the actual construction location. Id. Thus, we find that the *Ball* Court did not foreclose the validity of 29 C.F.R. § 5.2(*l*) as applied to batch plants adjacent to or even "virtually adjacent" to the construction site. This goes beyond the asserted plain meaning of the term "directly on the site of the work." Thus, *Ball* supports our conclusion that the term is ambiguous and requires interpretation.

Having determined that the phrase "directly on the site of the work" in the Davis–Bacon Act is ambiguous with regard to highway construction work, we now turn to the second step of the Chevron analysis to determine whether the Department's interpreta-

---

**5.** On the State Road 3 project, the truck drivers delivered 58,250 tons of construction material to the project site. Doc. 22, ¶ 5.

tion of the phrase as embodied in 29 C.F.R. § 5.2(*l*) is permissible.

### 29 C.F.R. § 5.2(*l*) Is Based On A Permissive Construction Of The Davis–Bacon Act

■ The regulation at issue, 29 C.F.R. § 5.2(*l*), defines "site of the work" to include geographical, functional, and temporal components. To be considered as "site of the work," an off-site facility must be "adjacent or nearby" to the actual construction site. 29 C.F.R. § 5.2(*l*)(1). The geographical component also includes a common sense element: the off-site facility must be "so located in proximity to the actual construction location that it would be reasonable to include [it]." 29 C.F.R. § 5.2(*l*)(2). *See also* 29 C.F.R. § 5.2(*l*)(1). The functional component requires the off-site facility to be "dedicated exclusively, or nearly so, to the performance of the contract or project." 29 C.F.R. § 5.2(*l*)(2). The temporal component, which is related to the functional component, requires the off-site facility to be non-permanent. 29 C.F.R. § 5.1(*l*)(3).

Contrary to the position advanced by *amicus* Building & Construction Trades Department, AFL–CIO, the "site of the work" does not reach as far as the "place or places where contract work is performed." *See* Doc. 14, p. 9. This analysis ignores the functional and temporal requirements of the regulation itself. The regulation requires a high degree of connection between the off-site facility and the actual construction site and is narrowly tailored to fulfill the statute's intended purpose. Laborers working at an adjacent or nearby facility dedicated exclusively, or nearly so, to the performance of the contract or project, which facility was established because of the construction project are no different from laborers toiling directly on the actual construction site. These laborers are deserving of the same wage protection afforded laborers working directly on the location where the construction will remain when the project has been completed. Because the Davis–Bacon Act is a remedial statute, it is properly subject to an interpretation in favor of those sought to be covered by its protection. The alternative, i.e., failing to protect the wages of the truck drivers delivering new asphalt to State Road 3 could not possibly have been the intended result of Congress. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* —— U.S. ——, ——, 114 S.Ct. 1439, 1453–54, 128 L.Ed.2d 119 (1994).

The regulation is consistent with the Department's long-standing interpretation of the statute, to which the Court should accord great weight. *See NLRB v. Bell Aerospace Co. Division of Textron, Inc.,* 416 U.S. 267, 274–74, 94 S.Ct. 1757, 1761–62, 40 L.Ed.2d 134 (1974); Doc. 10, and cases cited therein at pp. 12–13. The regulation also prohibits the unscrupulous contractor from creating an artificial off-site facility for the purpose of evading payment of prevailing wages to those laborers working at that facility. *See Administration of the Davis–Bacon Act: Hearings Before the Special Subcomm. on Labor of the House Comm. of Education and Labor,* 87th Cong., 2nd Sess. 831 (1962).

For all these reasons, we find that 29 C.F.R. § 5.2(*l*) is based on a permissive construction of the Davis–Bacon Act. *See Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781–82. In view of the above ruling, we do not find it necessary to address the Department's contention that Congress's failure to amend the Davis–Bacon Act constitutes ratification of the Department's position.

### The Wage Appeals Board's Decision Was Not Arbitrary Or Capricious

■ It is unclear whether Cavett appealed the Administrator's application of the regulation in addition to the validity of the regulation. *See* Doc. 9. In the event that it has, and with the hopes of bringing an end to this protracted case, we shall address the issue.

In his Decision, the Administrator found that because of the nature of the State Road 3 project and the relatively short distance between the batch plant and the construction site that it was reasonable to consider the batch plant as a part of the construction site, thus satisfying the geographical component of 29 C.F.R. § 5.2(*l*). The Administrator also found that because the batch plant was established after the contract was awarded and produced material exclusively or nearly so to the contract that the functional compo-

nent of 29 C.F.R. § 5.2($l$) was satisfied. The timing of the establishment of the batch plant also satisfies the temporal component of 29 C.F.R. § 5.2($l$).

Further supporting the Administrator's decision are the following factors. First, the decision to establish the batch plant at the Rush County Stone Company was made at a pre-construction meeting convened to discuss the State Road 3 project. This is evidence that the batch plant was established explicitly for the State Road 3 project. *See* 29 C.F.R. § 5.2($l$)(3). Second, although the batch plant had previously been in operation at the Rush County Stone Company, it was moved to a Harris City location before being re-established at the Rush County Stone Company and was dismantled after the completion of the State Road 3 project. This is evidence that the batch plant was a temporary facility established for the State Road 3 project. *See* id. Third, the Rush County Stone Company supplied the coarse aggregate required for the bituminous mix to resurface State Road 3. This is evidence that the batch plant could not have been established any closer to the actual construction site than it was.

Therefore, we find that the Administrator's decision was based on a consideration of the relevant factors and was not arbitrary or capricious. *See Citizens To Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823–24; 5 U.S.C. § 706(2)(A).

**IT IS THEREFORE ORDERED THAT:**

1) Plaintiff L.P. Cavett Company's motion for summary judgment (Doc. 9) is DENIED;

2) Defendant United States Department of Labor's motion for summary judgment (Doc. 10) is GRANTED; and

3) Defendant will prepare a proposed judgment entry for plaintiff's review and submit it to the Clerk within seven (7) days.