Dear Secretary Winstead:
You have requested our opinion whether State or federal prevailing wage laws would apply to a construction project for a bridge or tunnel spanning the Potomac River at the present site of the Woodrow Wilson Memorial Bridge. Your question arises as a result of the passage of Senate Bill 742 of 1996, which reflects Maryland's concurrence in the revised Woodrow Wilson Memorial Bridge and Tunnel Compact.[1]
Our opinion is that, under current law, the federal prevailing wage law known as the Davis-Bacon Act, 40 U.S.C. § 276a, would apply to the construction project.[2]
 I The Davis-Bacon Act
The Davis-Bacon Act, 40 U.S.C. § 276a, was passed in 1931 and originally applied only to direct federal construction. See S. Rep. No. 963, 88th Cong., 2d. Sess. (1964), reprinted in
1964 U.S.C.C.A.N. 2339, 2340-41. In its present form, the Davis-Bacon Act has the objective of affording protection to federally assisted projects as well as projects under direct federal contracts. Id. See also Building and Construction Trades Dept.v. United States Dept. of Labor (Midway Excavators, Inc.),932 F.2d 985, 986 (D.C. Cir. 1991) ("Congress enacted the Davis-Bacon Act to protect local contractors from being underbid on federally-funded construction projects . . . ."); L.P. Cavett Co. v.United States Dep't of Labor, 892 F. Supp. 973, 978 (S.D. Ohio 1995) ("The legislative history of the Federal-Aid Highways Act indicates that laborers performing work on federally-funded highway construction projects are . . . covered by the Davis-Bacon Act.").
In this regard, the Federal-Aid Highways Program expressly provides that the Secretary of the U.S. Department of Transportation "shall take such action as may be necessary to insure that all laborers and mechanics employed . . . on highway projects on the Federal-aid highways authorized under the highway laws providing for expenditures of federal funds upon the Federal-aid systems, shall be paid wages . . . as determined by the Secretary of Labor in accordance with . . . the Davis-Bacon Act (40 U.S.C. § 276a)." 23 U.S.C. § 113(a). Thus, your question turns on whether the Wilson Bridge project is (i) federally funded and (ii) a part of the Federal-Aid Highways Program.
As discussed in Part II below, the project satisfies this test. Hence, the Davis-Bacon Act would apply to the project.[3]
 II Woodrow Wilson Memorial Bridge and Tunnel Project
A. Davis-Bacon
In Senate Bill 742, the Woodrow Wilson Memorial Bridge and Tunnel Compact (the "Compact") defines "project" to include construction of a new bridge or a tunnel, as well as long-term rehabilitation or reconstruction of the existing bridge across the Potomac River as part of Interstate Route 95. Senate Bill 742, Chapter I, Article I. The Compact anticipates that the federal government will contribute "a 100% share" of the "cost of the continuing rehabilitation of the bridge until such time as the project is operational." Chapter I, Article IX. The anticipated federal funding also includes the "cost of planning, preliminary engineering and designs, . . . and final engineering for the project" and a "substantial contribution towards remaining project costs." Id.
In 1995, as part of the National Highway System Designation Act of 1995, Pub.L. No. 104-59, 109 Stat. 627, Congress enacted the Woodrow Wilson Memorial Bridge Authority Act of 1995 (the "Wilson Bridge Act"), which, among other things, amended the Federal-Aid Highways Program, 23 U.S.C. § 104, by directing the Secretary of the U.S. Department of Transportation to "obligate such sums as are necessary for each of fiscal years 1996 and 1997 for the rehabilitation of the Woodrow Wilson Memorial Bridge . . . ." P.L. 104-59, 109 Stat. 633, § 410.[4] Under the Wilson Bridge Act, the project, therefore, will be subsidized in part by federal funds.
In the Wilson Bridge Act, Congress determined the Woodrow Wilson Memorial Bridge to be a "vital link of the Interstate System." Pub.L. No. 104-59, 109 Stat. 627, § 402(4). The Interstate System is a part of the Federal-aid system and is a designation of routes that connect, as directly as possible, "the principal metropolitan areas, cities, and industrial centers, to serve the national defense and, to the greatest extent possible to connect at suitable border points with routes of continental importance in the Dominion of Canada and the Republic of Mexico."23 U.S.C. § 103(e)(a). Thus, the Woodrow Wilson Memorial Bridge is a part of the Federal-aid system under the Federal-Aid Highways Program, 23 U.S.C. §§ 101-158. This conclusion is further supported by Congress' inclusion of funding for the Woodrow Wilson Memorial Bridge project within the Federal-Aid Highways Program in the Wilson Bridge Act.
Accordingly, under current legislation, as a partially federally-funded project under the Federal-Aid Highways Program, the project would be subject to the Davis-Bacon Act.[5]
B. State Prevailing Wage Law
Maryland's prevailing wage law, enacted as Chapter 558 of the Laws of Maryland 1969, was modeled after the Davis-Bacon Act. The law's objective was "to protect local contractors and workmen against what was deemed to be unfair and predatory competition from outsiders who, by imparting cheap migratory labor, could obtain important public works contracts by underbidding contractors located in the community where the project was to be built." Barnes v. Commission of Labor and Industry,45 Md. App. 396, 403, 413 A.2d 259 (1980), aff'd 290 Md. 9 (1981).
The State prevailing wage law requires (i) the establishment of a minimum wage rate for each trade classification on a given public works construction project and (ii) the payment of those rates through all stages of the construction. § 17-208(b) of the State Finance and Procurement ("SFP") Article, Maryland Code. The State prevailing wage law applies to the actions of a "public body" — those entities authorized to contract for the construction of a public works project once the General Assembly allocates the necessary funds. 71 Opinions of the Attorney General 255, 258 (1986). The term includes the State, a unit of State government, or an instrumentality of the State. SF § 17-201(i)(1). However, the term does not include "a unit of the State government or instrumentality of the State funded wholly from a source other than the State." SF § 17-201(i)(2)(i).
The Woodrow Wilson Memorial Bridge and Tunnel project will be owned and operated by the Woodrow Wilson Memorial Bridge and Tunnel Authority (the "Authority"). The capital costs of the project may be financed by revenue bonds "for the purpose of paying all or any part of the cost of the project." Senate Bill 742, Chapter II, Article VI. These bonds "shall not constitute a debt of the State of Maryland." Id. Moreover, the "proceeds of the bonds of each issue shall be used solely for the payment of the cost of the project . . . ." Id. In addition, the Compact authorizes the Authority to collect tolls for the use of the project "to pay (i) the cost of maintaining, repairing, and operating such project and (ii) the principal of any of the interest on such bonds as the same shall become due and payable, and to create reserves for such purposes." Chapter II, Article VIII.
Thus, to the extent that the Authority's undertaking of the construction project will be "funded wholly from a source other than the State," the Authority would not be a "public body" as defined by the State prevailing wage law. Accordingly, the State prevailing wage law would not apply to the project.[6]
 III Conclusion
In summary, based upon currently effective federal legislation, it is our opinion that the federal prevailing wage law would apply to the project during the construction or rehabilitation phase of the project.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Brian G. Kim Assistant Attorney General
_________________________ Jack Schwartz Chief Counsel Opinions and Advice
[1] The current Compact is set forth at § 10-303 of the Transportation Article. Senate Bill 742 will not take effect until the District of Columbia enacts a law concurring in the Compact, as Maryland and Virginia have done. See Senate Bill 742, Section 2. This opinion assumes that this contingency will be met.
[2] We decline at this time to reach a judgment about the applicability of prevailing wage laws to maintenance or repair work after the bridge or tunnel is built. The apparent intent is that these costs be defrayed entirely through tolls charged by the facility's operator. We believe that an assessment of the legal situation is better made after details about the project's operations and operational financing are firmly established.
[3] Of course, Congress is always free to change the relevant test or to exempt the project from it.
[4] The ultimate cost of the federal share for the project will be proposed by the Secretary of the U.S. Department of Transportation by October 1, 1996 and submitted to Congress. Pub.L. No. 104-59, 109 Stat. 631, § 407(c). While the current authorization for the project is under the Federal-Aid Highways Program, Congress may enact subsequent legislation with respect to the ultimate financing of the project. It is, at this point, uncertain how the project will ultimately be financed.
[5] In 71 Opinions of the Attorney General 255, 256 (1986), we recognized the applicability of the Davis-Bacon Act to all federal and federally assisted construction works. Indeed, inCommonwealth of Virginia v. Marshall, 599 F.2d 588 (4th Cir. 1979), the Fourth Circuit held that a project was subject to the Davis-Bacon Act although only 17% of the cost was federally funded.
[6] It should be noted that the Compact also authorizes the Authority to accept loans and grants of money or materials or property from the United States or the signatory states or the District of Columbia, to enter into contracts with the signatory states or the District of Columbia for constructing the project, and to enter into public-private partnerships or to grant concessions for financing or constructing the project. Senate Bill 742, Chapter II, Article III, §§ 13, 17, and 19. The potential applicability of the State prevailing wage law would need to be reassessed were the Authority to be funded through a State source.
 *Page 102